UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

———————————————————  )
                                                       )
IN RE IMMUCOR, INC.                      )   CIVIL ACTION NO: 1:05-CV-
SECURITIES LITIGATION                 )   2276-WSD
———————————————————  )
                                                       )

## LEAD PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Lead Plaintiffs West Virginia Laborers' Pension Trust Fund, Western
Washington Laborers-Employers Pension Trust, Penny Reno, Pedro Simoes, and
Marlin Cobb ("Plaintiffs" or "Proposed Class Representatives") respectfully request
that this Court certify a proposed class consisting of all persons and entities who
purchased or otherwise acquired Immucor, Inc. ("Immucor" or the "Company")
common stock between August 16, 2004 through August 29, 2005, inclusive (the
"Class Period") and who were damaged thereby (the "Class").

The Proposed Class Representatives are shareholders who suffered losses from
their Class Period purchases of Immucor common stock. Excluded from the Class are
Defendants Immucor, Edward L. Gallup ("Gallup"), and Gioacchino De Chirico ("De
Chirico") (collectively, "Defendants"), any entity in which Defendants or any
excluded person has or had a controlling interest, the officers and directors of

Immucor, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.

## I.    PRELIMINARY STATEMENT

Securities fraud cases – like this one – alleging that public companies and their top executives issued false and misleading statements to the investing community are ideally suited for class treatment.  Class actions not only provide a mechanism to resolve numerous related claims in one forum, thus establishing a uniform standard for conduct and preserving judicial resources, but also serve the "public interests in the private enforcement of various regulatory schemes, particularly those governing the securities markets." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987); *see also In re Nat'l Data Corp. Sec. Litig.*, Master File No. 1:90-CV-1037-JEC, slip op. at 4 (N.D. Ga. Mar. 31, 1993) (attached hereto as Exhibit "A") ("it is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions.") (citing *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983)); *Anderson v. Bank of the S., N.A.*, 118 F.R.D. 136, 142 (M.D. Fla. 1987).

Courts construe Rule 23 liberally in securities cases to promote private enforcement of the federal securities laws.  *See Kennedy*, 710 F.2d at 717-18; *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 693 (N.D. Ga. 2002); *In re Miller Indus.Sec. Litig.*, 186 F.R.D. 680, 684 (N.D. Ga. 1999).  As a result, this action is

ideally suited for class treatment and, as shown more fully below, satisfies all of the Rule 23 requirements for certification.

## II.    BACKGROUND

### A.    Procedural History

On February 7, 2006, Plaintiffs filed their Consolidated Class Action Complaint ("Complaint") alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"). The Exchange Act claims are brought on behalf of a class of Plaintiffs who purchased Immucor common stock during the Class Period.

On March 7, 2006, Defendants moved to dismiss the Complaint. After full briefing, this Court, on October 4, 2006, entered an Order denying Defendants' Motion to Dismiss. In so doing, the Court found Plaintiffs satisfied the heightened pleading standards under Federal Rule of Civil Procedure 9(b), and that Plaintiffs adequately alleged material misstatements, scienter, and loss causation.

Accordingly, pursuant to the schedule agreed to by the parties and approved by the Court, Plaintiffs now move for class certification pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.

**B.      The §§10(b) and 20(a) Claims**

As set forth in the Complaint, Immucor is a publicly-traded company that develops, manufactures, markets and sells immunological diagnostic medical products to hospitals, clinical laboratories, and blood banks worldwide.  ¶¶2, 15, 25.[1]  The Company reported tremendous financial success throughout the 1990's, particularly in Europe where the blood banking industry was far more developed than in the United States.  ¶¶26-27.

Despite this reported success, Immucor's European operations were beset by a number of internal scandals.  ¶31.  Most notably, in 1997, the President of Immucor's German affiliate resigned in disgrace after it was discovered that he had embezzled more than $2 million from the Company.  *Id.*

**1.      Immucor "Cleans Up" Europe**

In May 1998, Gallup promoted De Chirico, a well-connected figure in the European blood banking industry who had been serving as President of Immucor's Italian affiliate, to serve as the Company's Director of European Operations.  ¶32.  De Chirico then seized total control over virtually every operational decision affecting the business, including the authorization and payment of affiliate expenses.  ¶¶33-34.

---

[1] "¶__" refers to the applicable paragraph of the Complaint.

De Chirico was particularly interested in the success of Immucor's Italian affiliate. ¶¶17, 32, 37.

In 2001, Immucor introduced a major new product, Galileo, to replace its older ABS2000 system. ¶38. The Company envisioned that this new product would "restructure the blood bank market" and expected that, due to its high purchase price and the need for extensive after-market services and supplies, Galileo would deliver substantial revenue growth and increases in net income. ¶¶38-39.

Touting himself as the "father of Galileo," De Chirico aggressively marketed the product throughout Europe and, as a result of these "efforts," Immucor reported quarter after quarter of "record" financial results. ¶¶38, 40. Because of De Chirico's so-called success as the Director of European Operations, Gallup tabbed De Chirico to be his successor in the hopes that De Chirico could produce similar results in the U.S. markets. ¶¶41-42. De Chirico became President and COO of Immucor in July 2003, and eventually replaced Gallup as CEO in May 2004. ¶¶41, 43.

### 2.    Immucor Covers Up Corruption in Italy

In September 2004, within months after De Chirico assumed his CEO duties, scandal again rocked Immucor. ¶45. Following a year-long investigation, Italian authorities arrested several individuals, including Immucor's chief Italian representative and long-time friend of De Chirico, on charges of bribery and contract-

rigging. ¶¶45-46. The investigation revealed that Immucor paid or authorized the payment of bribes to a prominent physician at a Milan hospital in exchange for the purchase of Galileo and contracts for future supplies and services. ¶45. The evidence uncovered through the investigation directly implicated De Chirico. ¶¶46-52.

Although this scandal generated widespread coverage by the Italian press, it received little attention in the United States. ¶57. Nonetheless, given the scope and nature of the illegal conduct reported in Italy, Defendants knew that the Company had to publicly address the situation. ¶¶53-54, 56. To that end, the Company called a "special meeting" during which Gallup and De Chirico spoke with management about the Italian bribery scandal. ¶55. Despite the seriousness of the reported crimes, Defendants decided to publicly deny or otherwise downplay the Company's involvement in any corruption or illegal activity that had taken place in Europe. ¶¶56-57.

As part of this strategy, on November 2, 2004, the Company issued a press release that, *inter alia*, falsely characterized the illegal conduct as a technical violation of "the books and records provisions of the Foreign Corrupt Practices Act" and failed to disclose the full extent of the corruption authorized by De Chirico and communicated to Gallup. ¶62. The press release further indicated that De Chirico had been stripped of his CEO duties during the Company's internal investigation. *Id.*

As the investigation continued to unfold, Italian authorities discovered that Immucor had bribed numerous physicians at various hospitals throughout Italy in exchange for product supply contracts, and masked those bribes as consulting fees. ¶¶47-51. In particular, the investigation revealed that De Chirico authorized illegal payments to another prominent Italian physician who had since become the Italian Health Minister. ¶¶48-49. Further corroborating the damning evidence of corruption exposed in Italy, PriceWaterhouseCoopers, a leading accounting firm retained by Immucor to investigate the scandal, issued a report identifying at least 20 payments to medical doctors that were legally "doubtful." ¶58.

Despite their knowledge of these criminal acts, Defendants continued to mislead the market regarding the extent of the corruption. In January 2005, Defendants made several statements falsely characterizing the corruption in Italy as an "isolated event" attributable to "poor bookkeeping" that "only recently come to light." ¶¶66-67, 70-71. Moreover, contrary to published reports, the Company boldly stated that, "[b]ased on the Company's internal investigation . . . , it does not appear that the Italian subsidiary made any improper payments to the physician in question." ¶71. Similarly, in April 2005, in addition to reiterating their prior denials, Defendants falsely represented that the illegal payments were not for bribes, but for "services rendered," and that the Company did nothing more than "violate the foreign corrupt

action practice paperwork provisions." ¶¶73-74, 77. These misrepresentations throughout the Class Period artificially inflated Immucor's stock price. ¶¶7, 69, 75, 93.

### 3.    Defendants are Forced to Reveal Bad News

No longer able to hide behind their stout denials, Defendants were forced to acknowledge that the illegal activity in Italy was far more serious than had been previously reported. ¶8. On August 26, 2005, Immucor announced that the SEC "had issued a formal order . . . related to payments made by the Company's Italian subsidiary to individuals associated with government medical facilities." ¶79. This revelation caused a significant drop in Immucor's stock price in only a few hours of trading before the weekend. ¶¶8, 79, 94.

Then on August 29, 2005, while Immucor's stock price was still reeling from the news of a formal SEC investigation, Defendants dumped more adverse information on the market, issuing another press release announcing Ramsey's resignation as CFO and a revision to previously reported fiscal 2005 earnings to account for unrecorded accruals for employee bonuses. ¶¶8, 81. Thus, buoyed by this additional bad news that again adversely impacted the market's perception of Defendants' credibility, Immucor's stock price continued its descent, closing at

$23.58 on September 1, 2005, a drop of more than 17% from the $28.61 closing price on August 25, 2005.  ¶¶8, 82, 94.

The negative disclosures did not stop there.  On October 19, 2005, the Company essentially admitted that, contrary to its repeated Class Period denials and consistent with reports by the Italian press, Immucor engaged in bribery and contract rigging in Italy.  ¶83.

## III.   ARGUMENT

For purposes of this motion, the Court should accept the allegations of the Complaint as true and not examine the merits of Plaintiffs' claims.  *See In re Bellsouth Corp. Sec Litig.*, No. 1:02-CV-2142-WSD, 2006 WL 870362  at *2 (N.D. Ga. April 3, 2006); *In re Theragenics Corp.*, 205 F.R.D. at 694; *In re Miller Indus.*, 186 F.R.D. at 684.  Consequently, the sole issue presented in this motion for class certification is whether Plaintiffs have fulfilled the requirements of Rule 23.  *In re Tyson Foods, Inc. Sec. Litig.*, No. Civ. A. 01-425-SLR, 2003 WL 22316548 at *2 (D. Del. Oct. 6, 2003); *In re DCA Sec. Litig.*, Civil Action No. 1:89-CV-2195-RCF, slip. op. at 4 (N.D. Ga. Dec. 21, 1990) (attached hereto as Exhibit "B").  As demonstrated below, the proposed Class has fulfilled the requirements of Rule 23, and the Court should certify this action as a class action and appoint the Proposed Class Representatives to represent the Class.

### A.    This Action Satisfies the Standards For Class Certification Under Fed. R. Civ. P. 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure requires that the following four requirements be met in order to maintain a suit as a class action:

> (1)    the class is so numerous that joinder of all members is impracticable;
>
> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The Proposed Class Representatives satisfy each of these prerequisites in this action.

### 1.    The Members Of The Class Are So Numerous That Joinder Of All Members Is Impractible

The proposed Class satisfies the numerosity requirement.  Plaintiffs need not establish the exact number of Class members, but must demonstrate that the Class is sufficiently numerous so that joinder of all members is impracticable.  *See, e.g., Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).  "Numerosity is generally presumed when a claim involves nationally traded securities." *In re Bellsouth Corp. Sec Litig.*, 2006 WL 870362 at \*2; *In re Theragenics*, 205 F.R.D. at

694; *In re Miller Indus.*, 186 F.R.D. at 685. Immucor securities were at all relevant times traded on NASDAQ; therefore, the presumption of numerosity applies. ¶20.

Moreover, the facts alleged in the Complaint demonstrate that the instant action satisfies the numerosity requirement. For example, the trading volume of Immucor's common stock on January 8, 2005, the day after several analysts touted Immucor by giving it an "outperform" rating, was more than 1.3 million shares. ¶69. In addition, shareholders are geographically dispersed throughout the country. *See In re Bearingpoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) (granting motion for class certification and holding that "[a]s it would be impracticable to join such a large and geographically diverse group, the numerosity requirement is easily satisfied."). As a result, the numerosity requirement is satisfied.

## 2.    This Action Involves Questions Of Law And Fact Common To Plaintiffs And The Class

In order to satisfy the commonality requirement of Rule 23(a)(2), it is not necessary that all questions of fact or law be common, but only that some questions be common. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986); *In re Bellsouth Corp. Sec Litig.*, 2006 WL 870362 at *2; *In re Theragenics*, 205 F.R.D. at 694; *In re Miller Indus.*, 186 F.R.D. at 685. This case involves almost exclusively issues of law and fact that are common to each member of the Class, thus easily satisfying this requirement.

- 11 -

Where, as here, a defendant has made material misrepresentations about a company through uniform public statements, or by a failure to disclose material facts, the commonality requirement of Rule 23(a)(2) is met.  *See*, *e.g.*, *Lipton v. Documation, Inc.*, 734 F.2d 740, 743 (11th Cir. 1984); *Blackie v. Barrack*, 524 F.2d 891, 902-05 (9th Cir. 1975) (holding that common questions of law and fact abound where alleged fraud involves uniform written documents such as news releases).  As the court observed in *In re $T^2$ Medical, Inc. Shareholder Litig.*,

> The plaintiffs assert claims of fraud on the market based on a continuous course of conduct by the defendants involving a series of misrepresentations and omissions, made by or on behalf of the defendants, over a period of approximately seven months.  The plaintiffs allege that the defendants released such misinformation in order to artificially inflate the stock price for their own financial gain.  The court finds that the alleged misrepresentations and omissions are common to all $T^2$ Medical shareholders who owned stock during the period at issue. Moreover, there are questions of law common to all class members, including whether the defendants' misrepresentations and omissions constituted fraud-on-the-market.  The court finds that questions of both law and fact common to the members of the class exist.

No. 1:92-CV-1564-RLV, 1993 WL 594003, at *5 (N.D. Ga. Nov. 16, 1993).

The common questions that the Court found in $T^2$ *Medical* are essentially the same questions that arise in this suit.  On behalf of the Class, Plaintiffs assert claims of fraud on the market resulting from a continuous course of conduct by Defendants that involved both omissions and misrepresentations in their public statements regarding the seriousness of Immucor's wrongdoing in Italy.  The Class members' claims arise

out of the same set of facts and are based upon common legal theories.  Each Class

member is confronted with identical issues, including:

> (a)  whether Defendants implemented the manipulative devices or engaged in the wrongful scheme alleged in the Complaint;

> (b)  whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

> (c)  whether Defendants misrepresented material facts;

> (d)  whether the Exchange Act was violated by Defendants' acts alleged in the Complaint;

> (e)  whether Defendants knew or were severely reckless in disregarding that the statements made by them were false and misleading;

> (f)  whether the prices of Immucor's publicly traded securities were artificially inflated; and

> (g)  the extent of damage sustained by Class members and the appropriate measure of damages.

¶23.  As the foregoing establishes, this Court should find that the commonality

requirement of Rule 23(a)(2) has been satisfied with respect to the Class.

### 3.  The Proposed Class Representatives' Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a)(3) requires that the claims of the

representative parties have the same essential characteristics as those of the class at

large.  *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).  Typicality does

not require identical claims or defenses, and "[a] factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class."  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (citations omitted); *Appleyard*, 754 F.2d at 958; *In re Theragenics*, 205 F.R.D. at 695; *In re Miller Indus.*, 186 F.R.D. at 685.  Moreover, even if the Proposed Class Representatives utilized the services of investment advisors, typicality is not defeated. *See Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2006 U.S. Dist. LEXIS 94470 at *23-24 (N.D. Calif. Dec. 20, 2006).

The claims of the Proposed Class Representatives are typical of the claims of the other Class Members in that they all arise from the same allegedly unlawful course of conduct and are based on the same legal theories.  Plaintiffs' claims are typical of the claims of the other members of the Class they seek to represent because the damages suffered by Plaintiffs and the members of the Class arise from and were caused by the same materially false and misleading representations and omissions made by or chargeable to Defendants, namely those statements downplaying the seriousness of Immucor's illegal activities that resulted in a formal SEC inquiry.

The Proposed Class Representatives will invoke the same legal theories to establish liability and damages under the federal securities laws that all other Class

- 14 -

members would if they sued separately. Therefore, the Proposed Class Representatives' claims are typical of members of the Class whom they seek to represent.[2]

### 4. The Proposed Class Representatives Will Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that plaintiffs show that they, as class representatives, will fairly and adequately protect the interests of the class. "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Theragenics*, 205 F.R.D. at 695; *In re Miller Indus.*, 186 F.R.D. at 686. To satisfy this requirement, plaintiffs must demonstrate: (1) that the class representatives' interests are not antagonistic to those of the other members of the class and (2) that the class representatives' attorneys are qualified, experienced, and generally able to conduct the litigation. *Kirkpatrick*, 827 F.2d at 726; *In re Theragenics*, 205 F.R.D. at 695-96; *In re Miller Indus.*, 186 F.R.D. at 686. The

---

[2] Under Eleventh Circuit precedent, neither a representative plaintiff's degree of investment experience and sophistication nor his degree of reliance will preclude satisfaction of the typicality requirement. *Kennedy*, 710 F.2d at 717; *In re Miller Indus.*, 186 F.R.D. at 686; *In re AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 429 (S.D. Fla. 1991). Nevertheless, the Proposed Class Representatives can and will demonstrate that they are sufficiently knowledgeable about the allegations and proceedings in this action to satisfy Rule 23.

Proposed Class Representatives certainly meet the adequacy requirement of Rule 23(a)(4) because their interests are directly aligned with the interests of absent members of the Class. Specifically, each Proposed Class Representative has been damaged by the same alleged conduct, and each has precisely the same interest in achieving the maximum possible recovery.

As this Court has previously noted, the "legal standard for adequacy of class representation . . . involves inquiry into questions of whether Plaintiffs' counsel are qualified, experienced and generally able to conduct the litigation." *In re ValuJet, Inc. Sec. Litig.*, Civil Action No. 1:96-CV-1355-TWT, slip op. at 10 (N.D. Ga. Aug. 28, 1998) (attached hereto as Exhibit "C") (citing *Kirkpatrick*, 827 F.2d at 726). In assessing the competence of counsel, the courts of the Eleventh Circuit have held that "there is a presumption of competence in the absence of proof to the contrary." *Id.* However, even without such a presumption, the Proposed Class Representatives have retained counsel highly experienced in class action litigation to prosecute their claims as well as those of the Class.

In conjunction with this Court's selection of the lead plaintiffs, the Court has already appointed as Co-Lead Counsel Chitwood Harley Harnes LLP and Lerach Coughlin Stoia Geller Rudman & Robbins LLP to prosecute these claims. There can be no legitimate dispute that these firms are highly experienced in securities class

action litigation and are capable of prosecuting this litigation on behalf of the Class.

Résumés of the respective firms are attached hereto as Exhibits "D" and "E".

**B.    The Standards for Class Certification Under Fed. R. Civ. P. 23(b)(3) Have Been Met**

Plaintiffs seek certification under Rule 23(b)(3).  Accordingly, Plaintiffs must

also demonstrate that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy . . . .

Fed. R. Civ. P. 23(b)(3); *see also Kirkpatrick*, 827 F.2d at 721 n.2.  As demonstrated

below, these requirements are satisfied and class certification is appropriate.

**1.    Common Questions of Law or Fact Predominate Over Any Questions Affecting Only Individual Members**

When common questions represent a significant aspect of a case and they can

be resolved in a single action, class action status is appropriate.  *See* 7A Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1778,

at 528 (2d ed. 1986).  The common questions, however, need not be dispositive of the

entire action, because "predominate" as used in the rule should not be equated with

"determinative."  *Id.* at 528-29.  Moreover, "[c]ourts generally focus on the liability

issue in deciding whether the predominance requirement is met, and if the liability

issue is common to the class, common questions are held to predominate over

individual questions." *In re Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 534 (S.D. Fla. 1986) (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)).

Plaintiffs' claim that Defendants violated § 10(b) of the Exchange Act – a fraud-on-the-market claim – is ideally suited to class action treatment. *See Tapken v. Brown*, No. 90-691-CIV-MARCUS, 1992 WL 178984, at *17 (S.D. Fla. Mar. 13, 1992); *In re AmeriFirst*, 139 F.R.D. at 427 ("[I]t is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions."). The fraud-on-the-market theory was expressly endorsed by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224, 227 (1988) and has been explained as follows:

> The fraud-on-the-market theory is based on the idea that information about a corporation's expected future value is quickly and accurately incorporated into the price at which the corporation's securities trade in public markets. The defendants are liable for any material misrepresentation which is proved to have caused the price of a security traded on an open and developed securities market to deviate from the security's efficient price. The security's efficient price is assumed to be the price at which the security would have traded in the absence of the misleading information. [citation omitted] Individuals who purchase or sell the security during the period of price deviation, and who are injured as a result, are entitled to recover regardless of whether those individuals knew of the misrepresentation or misleading omission. Persons seeking to recover under the fraud-on-the-market theory need not prove individual reliance. The inquiry in a fraud-on-the-market case is not whether an individual investor was fooled but rather if the market as a whole was fooled.

$T^2$ *Medical*, 1993 WL 594003, at *7. Because reliance is not an individual issue, but an issue that is presumed for a class as a whole, the fraud-on-the-market theory provides a predominant common issue in securities fraud cases. *Lipton*, 734 F.2d at 745.

Therefore, with the exception of individual damages calculations, the respective factual and legal elements of liability in this action will dominate the litigation with respect to the Class. "[O]nce liability and the relevant dates are established, assignment of damages becomes a ministerial task." *In re Alexander Grant*, 110 F.R.D. at 534. Common issues therefore predominate.

### 2. The Class Action Is Superior To Other Available Methods of Adjudication

The class action provides a superior vehicle for resolution of the claims of members of the Class. Courts have repeatedly recognized the general superiority of class treatment in securities class actions involving large numbers of investors. *See, e.g., In re Theragenics*, 205 F.R.D. at 697; *In re Miller Indus.*, 186 F.R.D. at 688. In addition, "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kirkpatrick*, 827 F.2d at 725.

This Court has held that in making a determination as to whether class treatment is superior to other methods of adjudication,

> the Court must find that difficulties in management will not render this action improper for certification. Certification cannot be denied because the number of potential class members makes the proceeding complex or difficult. Difficulties in management of a case become significant only if they make the class action a less fair and efficient method of adjudication than other available techniques.

*In re Theragenics*, 205 F.R.D. at 697-98 (citations omitted); *In re Miller Indus.*, 186 F.R.D. at 688 (same).

Simply, this action is best managed as a class action because prosecution of this action on a class basis is more efficient than the adjudication of thousands of individual claims. Furthermore, because shareholders may find individual litigation cost-prohibitive, the class mechanism provides a means for fair and efficient resolution of their claims. Indeed, few members of the Class would, as a practical matter, be in a position to proceed individually against Defendants. The class action is the only feasible method of adjudication where those who have been injured are in a poor position to seek legal redress because they lack information or because redress is prohibitively expensive. *Nat'l Data Corp.*, slip op. at 4 (N.D. Ga. Mar. 31, 1993). Finally, Plaintiffs' Co-Lead Counsel, who have substantial experience in class action litigation, do not anticipate any significant or unusual difficulties in the management of this litigation. Therefore, the class action device is the superior method for adjudicating the claims of the members of the Class.

## IV.    CONCLUSION

Plaintiffs respectfully request that this action be certified as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined in Plaintiffs' motion, and that the Proposed Class Representatives be certified as the representatives of the Class.

DATED:  January 22, 2007                CHITWOOD HARLEY HARNES LLP


                                         /s/ Martin D. Chitwood
                                        _____
                                        MARTIN D. CHITWOOD
                                        Georgia Bar No. 124950
                                        GREGORY E. KELLER
                                        *Admitted Pro Hac Vice*
                                        MERYL W. EDELSTEIN
                                        Georgia Bar No. 238919
                                        2300 Promenade II
                                        1230 Peachtree Street, N.E.
                                        Atlanta, GA  30309
                                        Telephone:  404/873-3900
                                        404/876-4476 (fax)

                                        LERACH COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
                                        PAUL J. GELLER
                                        JACK REISE
                                        120 East Palmetto Park Road, Suite 500
                                        Boca Raton, FL  33432
                                        Telephone:  561/750-3000
                                        561/750-3364 (fax)

                                        *Co-Lead Counsel for Lead Plaintiffs*

## **Local Rule 7.1D Certification**

Counsel for Plaintiffs hereby certifies that the text of this memorandum has been prepared with Times New Roman 14 point, one of the fonts and point selections approved by the Court in Local Rule 5.1B.


                                     _/s/ Martin D. Chitwood_____
                                       Martin D. Chitwood
                                       Georgia Bar No. 124950

**CHITWOOD HARLEY HARNES LLP**
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, GA 30309
(404) 873-3900
(404) 876-4476 (facsimile)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| _____ ) | |
| IN RE IMMUCOR, INC. ) | CIVIL ACTION NO: 1:05-CV- |
| SECURITIES LITIGATION ) | 2276-WSD |
| ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day served a true and correct copy of the

within and foregoing "LEAD PLAINTIFFS' MEMORANDUM OF LAW

IN SUPPORT OF MOTION FOR CLASS CERTIFICATION" via the Court's

electronic filing notification and by first-class U.S. Mail, postage prepaid, upon

counsel at the following addresses:

Emmet J. Bondurant
Jeffrey O. Bramlett
Corey F. Hirokawa
Emily Hammond Meazell
**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 W. Peachtree Street, N.W.
Atlanta, GA 30309

                                    **CHITWOOD HARLEY HARNES LLP**

                                    /s/ Martin D. Chitwood
                                    Martin D. Chitwood
                                    Georgia Bar No. 124950
                                    Gregory E. Keller
                                    *Admitted pro hac vice*
                                    Meryl W. Edelstein

- 23 -

Georgia Bar No. 238919
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Tel:  (404) 873-3900
Fax:  (404) 876-4476
mchitwood@chitwoodlaw.com