FILED IN CLERKS OFFICE
U.S.D.C.

DEC 21 1990

By: _____
Deputy Clk.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

In re DCA SECURITIES LITIGATION

Master File No.
1:89-cv-2195-RCF

This Order Relates To:

| | | |
|---|---|---|
| ABBAS ROSTAMIZADEH, On Behalf of Himself and All Others Similarly Situated | : : : : : | |
| vs. | : : : | 1:89-cv-2195-RCF |
| BERTIL D. NORDIN, JAMES F. OTTINGER, CRAIG J. HUFFAKER, FRANK A. BONSAL, JR. and DIGITAL COMMUNICATIONS ASSOCIATES, INC. | : : : : | |
| ROBERT T. FERRIS, D.D.S., Ph.D., P.A., PENSION PLAN, On Behalf of Himself and All Others Similarly Situated | : : : : : : | |
| vs. | : : : | 1:89-cv-2912-RCF |
| BERTIL D. NORDIN, JAMES F. OTTINGER, CRAIG J. HUFFAKER, FRANK A. BONSAL, JR. and DIGITAL COMMUNICATIONS ASSOCIATES, INC. | : : : : | |
| ROBERT FLANDERS, On Behalf of Himself and All Others Similarly Situated | : : : : | |
| vs. | : : : | 1:89-cv-2913-RCF |
| BERTIL D. NORDIN, JAMES F. OTTINGER, CRAIG J. HUFFAKER, FRANK A. BONSAL, JR. and DIGITAL COMMUNICATIONS ASSOCIATES, INC. | : : : : | |

O.72A

<u>ORDER</u>

These consolidated securities fraud actions are before the court on plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23. Also before the court is plaintiffs' motion for relief from LR 300-4, NDGa. Defendants oppose both motions. For the reasons discussed herein, the court will conditionally grant plaintiffs' motion for class certification pursuant to Rules 23(b)(3) and 23(c)(4)(B), and will grant in part plaintiffs' motion for relief from Rule 300-4.

<u>BACKGROUND</u>

These class actions are brought against Digital Communications Associates, Inc. [DCA] and certain of its officers and directors [the defendants]. Plaintiffs seek to bring these actions on behalf of a class of persons who purchased DCA common stock between April 5, 1988 and November 30, 1988, and seek to obtain damages for violations of the federal securities laws as well as under theories of common law fraud and negligent misrepresentation.

The consolidated amended class action complaint [the complaint] alleges that the defendants issued a series of false and misleading statements, including an annual report, a Form 10-K, Form 10-Qs, reports to shareholders and press releases. Specifically, it is alleged that the false and misleading statements, concerning DCA, its finances and management, the development, design and sales of its products, its earnings and its future business prospects, together with other material non-

2

disclosures, had the effect of manipulating or artificially inflating the market price of DCA stock. Plaintiffs allege that defendants acted willfully, recklessly, or with gross negligence concerning these statements because defendants knew or should have known that DCA was suffering from a slowdown in its business and declining sales of certain key products and its future revenue and earnings growth were seriously impaired.

Plaintiffs allege that on August 30, 1988, there was a "partial disclosure" by defendants of a drop in earnings and revenue [the August 30 announcement]. However, plaintiffs allege that defendants falsely attributed the decline to a temporary "seasonal slowdown" when in fact DCA's problems were more deeply rooted in its business and products. Plaintiffs allege that the true extent of DCA's problems was not disclosed until November 30, 1988 [the November 30 announcement]. Plaintiffs allege that as a result of these disclosures, the price of DCA stock dropped from about $30 per share prior to the August 30 announcement, to about $20 per share after the August 30 announcement, and later to about $17 per share after the November 30 announcement.

Plaintiffs seek to certify a class of "persons who purchased DCA common stock during the period from April 5, 1988 (the date of the issuance of DCA's results of operations for the quarter end[ing] March 31, 1988) through November 30, 1988 . . . ." Complaint at ¶ 18. Excluded from the proposed class are

3

defendants, their families, and legal successors in interest to any excluded party.  **Id.**

Defendants deny all material allegations.  Defendants further allege that at all times they acted in good faith and fully conformed their public statements to the applicable securities laws.  Defendants contend that any alleged misrepresentations or omissions were made without any intent to deceive.  Defendants also allege that the price of DCA stock has long been acknowledged as highly volatile and that plaintiffs and other putative class members should have been aware of such volatility.

DISCUSSION

   I.  Class Certification

1. General Principles of the Law of Class Certification

Numerous courts have concluded that class action treatment is appropriate where plaintiffs seek redress for alleged violations of securities laws because it is well-recognized that private enforcement of these laws is a necessary supplement to government regulation.  See Eisenburg v. Gagnon, 766 F.2d 770, 785 (3d Cir. 1985), cert. denied sub nom. Wasserstrom v. Eisenberg, 474 U.S. 946, 106 S. Ct. 342 (1985).  At the certification stage of a class action, whether the requirements of Rule 23 are satisfied is the only issue before the court.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S. Ct. 2140, 2152 (1974). Additionally, when a court is in doubt as to whether to certify a class action, the court should err in the direction of allowing

4

the suit to go forward as a class action. <u>Eisenburg</u>, 766 F.2d at 785. Nonetheless, courts are to certify class actions only after engaging in a "rigorous analysis" to ensure compliance with Fed. R. Civ. P. 23. <u>General Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982).

## 2. Satisfaction of Rule 23(a) Requirements

The decision on whether to grant class certification is vested within the trial court's discretion. <u>See Freeman v. Motor Convoy, Inc.</u>, 700 F.2d 1339, 1347 (11th Cir. 1983). Plaintiffs have the burden of proving that the requirements of Fed. R. Civ. P. 23 are met. <u>See Zeidman v. J. Ray McDermott & Co.</u>, 651 F.2d 1030, 1038 (5th Cir. Unit A 1981). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The court will address seriatim whether the named plaintiffs satisfy each of these requirements for the proposed class period.

### A. Numerosity

The numerosity requirement is satisfied if the number of putative class members is so large that joinder is impracticable. <u>See Kilgo v. Bowman Transportation, Inc.</u>, 789 F.2d 859, 878 (11th Cir. 1986). Plaintiffs are not required to allege the exact number of class members. <u>Evans v. U.S. Pipe & Foundry Co.</u>, 696 F.2d 925, 930 (11th Cir. 1983). Plaintiffs allege that members

5

of the class "number in the thousands." Complaint at ¶ 19. In this case, defendants do not challenge the numerosity requirement in that "DCA has several thousand shareholders throughout the United States and in foreign countries." Defendants' Response at 17. Thus, the court finds that plaintiffs have satisfied the numerosity requirement.

B. Common Questions of Law or Fact

Under Rule 23(a)(2) plaintiffs must show that questions of law or fact are common to the class members. Defendants argue that plaintiffs have failed to show "a common course of conduct extending over an entire period, directed against all investors, generally relied upon, and violating common statutory provisions." Defendants' Response at 19, citing Blumenthal v. Great American Mortgage Investors, 74 F.R.D. 508, 512 (N.D. Ga. 1976) (Freeman, J.). Defendants contend that plaintiffs allege a wholly different strategy by defendants after August 30, 1988. Because defendants contend that plaintiffs allege two divergent courses of conduct, defendants assert that the court cannot find commonality throughout the requested class period for two reasons.

First, defendants contend that numerous questions of fact will differ between the group of DCA shareholders who purchased stock before the August 30, 1988 announcement [the pre-August 30 group] and those who purchased afterward [the post-August 30 group]. Second, defendants contend that the legal theories offered in support of each group's claims will differ.

6

Defendants contend that proof of recovery for the pre-August 30 group will focus on defendants' alleged falsifying documents, understating expenses and manipulating accounts to produce artificially inflated earnings relevant to that time period. Defendants assert that proof of recovery for the post-August 30 group will center on defendants' allegedly false and misleading statements that DCA's reduced earnings resulted from a seasonal slowdown.

Plaintiffs argue that defendants are asking that the court resolve questions of fact as to whether defendants' pre-August 30 and post-August 30 conduct was part of "separate conspiratorial episodes." Plaintiffs' Reply at 12. With regard to the question of commonality, the court agrees with the named plaintiffs and finds that the complaint sufficiently alleges a common course of conduct directed at both the pre-August 30 group and the post-August 30 group. See Blackie v. Barrack, 524 F.2d 891, 902 (9th Cir. 1975) (Where repeated similar misrepresentations are alleged, class is united by a common interest in determining whether defendants' conduct, as broadly defined, is actionable), cert. denied, 429 U.S. 816, 97 S. Ct. 57 (1976).

The court recognizes that there may be some differences in law and in fact between the pre-August 30 group and the post-August 30 group. However, the commonality requirement does not demand an identity of both facts and law. Rather, it requires a showing that there are some common questions of law or fact. Plaintiffs allege that defendants' material omissions and

7

misrepresentations in the statements and reports particularized in the complaint had the effect of artificially inflating the price of DCA stock throughout the entire proposed class period. In light of the nature of plaintiffs' claims under the federal securities laws, the court finds this requirement is satisfied because whether defendants misrepresented or omitted material facts relating to the financial condition of DCA is clearly a common issue of law and fact shared by all persons who purchased DCA stock during the class period.

C. Typicality of Named Plaintiffs

Although the typicality requirement overlaps somewhat with the commonality requirement, each test is applied from a different perspective. 1 H. Newberg, Newberg on Class Actions § 3.13 (1985). As Professor Newberg has observed, "[t]he common question test determines if a group of similarly situated persons shares claims which raise common questions . . . . [and] [t]he typicality criterion focuses on whether there exists a relationship between the plaintiffs' claims and the claims alleged on behalf of the class." Id.

With regard to the typicality requirement, this court has previously stated:

> The typicality requirement of Rule 23(a)(3) is satisfied if the claims of the named plaintiffs have the same essential characteristics as the class at large. See Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985). Factual differences between the claims of the named plaintiffs and potential class members do not necessarily preclude typicality. Id.

Sheftelman v. Jones, 667 F. Supp. 859, 863 (N.D. Ga. 1987).

8

In arguing against class certification on this point, defendants contend that the class period, if any, should commence after a July 7, 1988 announcement by DCA of its record earnings and revenues for the fiscal year ending June 30, 1988. Defendants contend that plaintiffs' claims are atypical of those who purchased prior to the announcement. The court does not find that argument to be persuasive.

It is uncontroverted that the named plaintiffs' purchases of DCA stock during the class period occurred after the July 7, 1988 announcement.[1]  Yet, the essence of plaintiff's claim is that defendants' fraudulent and/or grossly negligent activity began on April 5, 1988 with the issuance of an announcement purportedly detailing the results of DCA's operations for the previous quarter.  Defendants' arguments fail to address how plaintiffs' allegations concerning the April 5, 1988 to July 7, 1988 period differ from the July 7, 1988 to August 30, 1988 period.  Thus, the court agrees with plaintiffs, and finds that to the extent plaintiffs' allege the same activity by defendants from April 5 until August 30, 1988, the named plaintiffs' claims are

---

[1]Rostamizadeh first purchased a total 300 shares of DCA stock in three different trades on March 8, 25, and 28, 1988.  He sold these shares, after the July 7 announcement, at a profit on July 11, 1988.  He purchased another total of 300 shares on July 28 and August 16, 1988, and sold them at a loss on September 7, 1988 after the August 30 announcement.

Ferris, on behalf of his pension plan, purchased 300 shares of DCA stock on July 22, 1988, and sold them at a loss on September 22, 1988.

Flanders, who owned 100 shares, also purchased his DCA stock on July 22, 1988, and also sold them at a loss on September 22, 1988.

essentially the same as of those class members who purchased his DCA stock prior to July 7, 1988. Thus, plaintiffs' claims meet the typicality requirement for the time period between April 5, 1988 and August 30, 1988.

However, the court finds that the named plaintiffs have failed to show how their claims are essentially the same as the unnamed class members who purchased DCA shares after the August 30, 1988 disclosure. Each of the three named plaintiffs purchased their DCA stock before the August 30, 1988 announcement, and therefore are members of the pre-August 30 group. Although there are common questions of law and fact shared by the claims of both the pre-August 30 and post-August 30 groups, claims brought by the three named plaintiffs as members of the pre-August 30 group are not typical of claims to be brought by the post-August 30 group because plaintiffs have pled that defendants' alleged course of conduct in making the August 30 announcement differs from its previous course of conduct. <u>See</u> Complaint at ¶ 5 ("August 30 announcement . . . . a partial disclosure of the adverse facts").

Both groups rely on the same general legal theory that defendants' common course of alleged misconduct was directed against all investors and generally relied upon, but it is clear that purchasers of DCA shares after the August 30 announcement have <u>significantly different</u> claims than those who purchased before the August 30 announcement. Proof of claims for members of the post-August 30 group will center on whether defendants'

representations concerning the "seasonal slowdown" were false and misleading.  The post-August 30 group's damages will presumably be determined from the drop in the price of DCA stock from about $20 to about $17.

In contrast, proof of claims for members of the pre-August 30 group will center on whether defendants' representations from April 30, 1988 until the August 30, 1988 announcement were false and misleading.  The pre-August 30 group's damages will presumably be determined from the drop in the price of DCA stock from about $30 to about $20.  It is entirely conceivable that one group might be entitled to recover damages from defendants despite the other group's lack of proof on its claims.  Hence, the named plaintiffs' individual circumstances are "markedly different" from those putative class members who purchased DCA stock after the August 30, 1988 announcement.  See <u>Weiss v. York Hospital</u>, 745 F.2d 786, 809 n.36 (3d Cir. 1984), <u>cert.</u> <u>denied</u>, 470 U.S. 1060, 105 S. Ct. 1777 (1985), <u>citing</u> 7 C. Wright & A. Miller, Federal Practice and Procedure § 1764 (1972); <u>Angelastro v. Prudential-Bache Securities</u>, 113 F.R.D. 579, 583 (D.N.J. 1986) (Wright & Miller approach screens out class actions where the legal or factual position of the class representative is "markedly different" from that of other class members even though there are common questions of law or fact.).  <u>See also</u> 7 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1764 (2d ed. 1986).

11

Thus, the three named plaintiffs do satisfy the typicality requirement for a class composed of purchasers of DCA securities who bought their stock from April 5, 1988 until the August 30, 1988 disclosure. However, the three named plaintiffs do not so satisfy the typicality requirement for a class composed of purchasers of DCA securities who bought their stock from after August 30, 1988 announcement until the November 30 announcement.

In determining that the named plaintiffs fail to satisfy the typicality requirement for the post-August 30 group, the court does not find a fatal conflict of interest between the two groups. On the contrary, it would appear that the claims of the two subclasses should necessarily be decided contemporaneously because of the clear overlap as to the factual and legal issues. Although the court is aware that certifying a subclass of purchasers encompassing the post-August 30 group, may entail certain class management problems,[2] the court believes that a judicious use of its discretion may call for the certification of a subclass of the post-August 30 group pursuant to Rule 23(c)(4)(B).

Accordingly, pursuant to that subsection, the court will conditionally certify two subclasses of plaintiffs for this action. The first subclass will be comprised of purchasers of

---

[2]Defendants contend that approximately 1.5 million shares of DCA stock were traded during the three-day period of August 30 through September 1, 1988. Defendants further contend that this colossal volume of buying and selling would create severe difficulties in managing the class, such as identifying class members and calculating their damages. See Defendant's Response at 22.

DCA stock between the dates of April 5 and August 29, 1988. The second subclass will be comprised of purchasers of DCA stock between the dates of August 30 and November 30, 1988. As further discussed herein, the court finds that the named plaintiffs satisfy the Rule 23 requirements for the first subclass. Plaintiffs' counsel will be given forty-five (45) days from the entry of this order in which to find an adequate class representative for the second subclass. At that time the court will consider whether the claims of the proposed class representatives for the second subclass satisfy the typicality requirement, and whether the proposed class representative of the second subclass is an adequate representative for that subclass.

### D. Adequacy of Representation

This requirement goes to the issue of "whether the named plaintiffs have any interests antagonistic to those of the rest of the class." Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987), cert. denied, 485 U.S. 959, 108 S. Ct. 1221 (1988). Additionally, plaintiffs must show that plaintiffs' counsel is competent to litigate the class action. Griffin v. Carlin, 755 F.2d 1516, 1532 (11th Cir. 1985). Defendants contend plaintiffs have failed to establish the adequacy of both named plaintiffs and counsel.

Defendants contend that three named plaintiffs cannot properly serve as named representatives for both the pre-August 30 group and the post-August 30 group because the financial interests of the two groups are "adverse." The court need not

13

address this argument in light of its previous ruling that the claims of the named plaintiffs are not typical of the post-August 30 group.

Defendants also assert that the named plaintiffs "lack sufficient knowledge of their claims, show a profound lack of understanding of their obligations as class representatives, have not fulfilled their discovery obligations . . . and lack credibility." Defendants' Response at 31. After carefully reviewing defendants' allegations on this point, the court concludes that plaintiffs have demonstrated sufficient knowledge of their claims and their financial obligations to serve as class representatives. Ignoring the merits of the discovery dispute at issue, the court also concludes that it would be an abuse of discretion to refuse to certify a class action solely on the basis of a named plaintiff's failure to respond to a deposition question when defendants have yet to file a motion to compel concerning that deposition question. Concerning the named plaintiffs' credibility, the court finds to the extent that there are any inconsistencies in the named plaintiffs' testimony, such inconsistencies are not sufficiently serious to merit disqualification as class representatives.

Finally, although defendants challenge the experience of plaintiffs' counsel, the court is satisfied that plaintiffs' counsel is adequate to litigate this matter. The court notes that there is a presumption of competence in the absence of proof to the contrary. 1 H. Newberg, Newberg on Class Actions § 3.42

14

(1989). Not only have defendants failed to produce any proof of incompetence, plaintiffs' lawyers have come forward with sufficient evidence of their own qualifications and experience. Though the court will remind plaintiffs' counsel of its duty inform their clients of the progress of this litigation and include them in all critical decisions, the court does not find any of proof of the alleged mis-or-malfeasance on the part of plaintiffs' counsel sufficient to disqualify them.

### 3.  Satisfaction of Rule 23(b)(3)

Having satisfied all the requirements of Rule 23(a), plaintiffs must also satisfy the requirements of one of the three subsections of Rule 23(b).  Plaintiffs allege in the complaint that this action may be maintained under Rule 23(b)(3) which provides that a class action may be maintained if the court finds that:

> [T]he questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The named plaintiffs have alleged that a series of defendants' related misrepresentations and omissions artificially inflated the price of DCA securities.  Given that factor, and given that plaintiffs are entitled to a presumption of reliance for purposes of this motion,[3] the court finds that common questions of law and fact easily predominate over questions affecting individual class

---

[3]<u>Basic Inc. v. Levenson</u>, 485 U.S. 224, ____, 108 S. Ct. 978, 990-93 (1988).

members (i.e. whether defendants' communications were of a false or misleading nature, the absence or presence of scienter, materiality of alleged omissions or misrepresentations). <u>See</u> Plaintiffs' Motion at 10.

<u>4. Pendent State Law Claims</u>

In addition to count I of plaintiffs' complaint alleging claims arising under federal securities law, counts II and III of plaintiff's complaint allege the common law claims of fraud and negligent misrepresentation. Defendants argue that both of these claims are not suitable for class certification because the court would be forced to consider the application of the laws of all fifty states. Defendants also note that the undersigned has previously declined to certify state law fraud and negligent misrepresentation claims in the context of a securities fraud class action case. <u>See</u> <u>Ockerman v. King & Spalding</u>, 1988 U.S. Dist. LEXIS 9898 (1988). Plaintiffs point to numerous district court decisions rejecting defendants' argument and certifying pendent common law claims in the context of federal securities fraud class action suits. <u>See</u> Plaintiffs' Reply at 39-40.

The court finds the instant case distinguishable from <u>Ockerman</u> in that Georgia has sufficient significant contacts with the facts of this case to justify the application of Georgia law.[4] <u>See</u> <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 814-23, 105 S. Ct. 2965, 2976-80 (1985) (There must be a showing of

―――――――――

[4]Under Georgia choice of law rules, it would appear that Georgia law would apply. <u>See</u> <u>Baltimore Football Club, Inc. v. Lockheed Corp.</u>, 525 F. Supp. 1206, 1208-09 (N.D. Ga. 1981).

16

"significant contact or aggregation of contacts" between forum state and each class member's claims so that applying the law of the forum state does not violate due process.). In this case, DCA is a Georgia corporation with its principal offices located in Georgia. During all times relevant to the complaint, each of the defendant officers was based in DCA's Georgia offices. Thus, it is not unreasonable to expect that the defendants understood and expected that their activities as officers and directors of a Georgia corporation would be governed by Georgia law. Also, it appears that DCA's publicly disseminated documents containing some of the alleged misrepresentations were prepared in and disseminated from Georgia.

Additionally, the court concludes that the interests of Georgia as well as the interests of other states would best be served by an application of Georgia law. First, Georgia has a compelling interest in protecting its good name by deterring Georgians from committing tortious acts which cause injury to members of the public, no matter whether "the public" resides in Albany, Georgia or in Albany, New York. See Gruber v. Price Waterhouse, 117 F.R.D. 75, 82 (E.D. Pa. 1987); In re Pizza Time Theatre Securities Litigation, 112 F.R.D. 15, 18 (N.D. Cal. 1986). Second, the interests of other states are served by this court's allowing their citizens to adjudicate their pendent state law claims here under Georgia law, rather than requiring each out-of-state class member to take the unlikely step of litigating

17

his state law claims in his respective state court.  See <u>Gruber</u>, at 82; <u>Pizza Time</u>, at 21.

For these reasons and for the same reasons that the court provisionally certified two subclasses to litigate the class members' claims under federal securities laws, the court will certify the pendent state law claims for each subclass. Nonetheless, despite the court's provisional certification of the two state law claims, the court puts the parties on notice that, to the extent that the parties' respective briefs on this issue are somewhat lacking in: (1) their discussion of the nature of plaintiffs' claims under Georgia common law and (2) the application of <u>Shutts</u> to the facts at hand, the court may well revisit this issue in the near future.

## II. Motion for Relief from Local Rule 300-4

LR 300-4, NDGa. severely limits the ability of counsel for both parties to communicate with potential class members in a Rule 23(b)(3) class action.  Plaintiffs' counsel seeks relief from the prohibitions of LR 300-4, NDGa. on the grounds that the local rule violates Rule 23 of the Federal Rules of Civil Procedure and the first amendment to the United States Constitution.  The court recognizes the inherently coercive nature of communications between parties and class members, and that unsupervised, unilateral communications between prospective class members and counsel for the parties may threaten a class member's independent exercise of judgment to include or exclude himself from the appropriate class.

18

On the other hand, Rule 300-4 is inadequate to the extent that it fails to distinguish between plaintiffs' class counsel who have a potential attorney-client relationship with class members and defendants' counsel whose interest is adverse to the class. See Kleiner v. First National Bank Of Atlanta, 751 F.2d 1193, 1206-07 (11th Cir. 1985). In this instance, the court need not determine whether the local rule is unconstitutional or violates Rule 23 to the extent that the court will relieve plaintiffs' counsel from complying with much of the provisions of LR 300-4(b), NDGa. The court believes that it has crafted an order that addresses the concerns embodied in the local rule without infringing on the rights of class members. See Exhibit A to this Order.

III. Conclusion

Accordingly, plaintiffs' motion for relief from LR 300-4, NDGa. is GRANTED in part. Plaintiffs' motion for class certification is conditionally GRANTED. Plaintiffs' counsel will be given forty-five (45) days in which to find an adequate class representative for the subclass of purchasers of DCA stock who purchased their stock after August 29, 1988 but before November 30, 1988. The two certified subclasses in this action will include the following members:

> Subclass I: All persons who purchased shares of DCA common stock during the period from April 5, 1988 through August 29, 1988. Excluded from this Subclass are the defendants herein, members of the immediate family of each of the individual defendants, and the legal representatives, heirs, successors or assigns of any such excluded party.

> Subclass II:  All persons who purchased shares of DCA
> common stock during the period from August 30, 1988
> through November 30, 1988.  Excluded from this Subclass
> are the defendants herein, members of the immediate
> family of each of the individual defendants, and the
> legal representatives, heirs, successors or assigns of
> any such excluded party.

Counsel for the parties are DIRECTED to confer and submit a proposed class notice form to the court within sixty (60) days from the date of entry of this order.

SO ORDERED, this _20_ day of December, 1990.

RICHARD C. FREEMAN
UNITED STATES DISTRICT JUDGE

20

## EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

In re DCA SECURITIES LITIGATION

Master File No.
1:89-cv-2195-RCF

This Order Relates To:

ABBAS ROSTAMIZADEH,                    :
On Behalf of Himself and               :
All Others Similarly Situated          :
                                       :
              vs.                      :    1:89-cv-2195-RCF
                                       :
BERTIL D. NORDIN, JAMES F.             :
OTTINGER, CRAIG J. HUFFAKER,           :
FRANK A. BONSAL, JR. and DIGITAL:
COMMUNICATIONS ASSOCIATES, INC. :
_____       :
                                       :
ROBERT T. FERRIS, D.D.S.,              :
Ph.D., P.A., PENSION PLAN,             :
On Behalf of Himself and               :
All Others Similarly Situated          :
                                       :
              vs.                      :    1:89-cv-2912-RCF
                                       :
BERTIL D. NORDIN, JAMES F.             :
OTTINGER, CRAIG J. HUFFAKER,           :
FRANK A. BONSAL, JR. and DIGITAL:
COMMUNICATIONS ASSOCIATES, INC. :
_____       :
                                       :
ROBERT FLANDERS,                       :
On Behalf of Himself and               :
All Others Similarly Situated          :
                                       :
              vs.                      :    1:89-cv-2913-RCF
                                       :
BERTIL D. NORDIN, JAMES F.             :
OTTINGER, CRAIG J. HUFFAKER,           :
FRANK A. BONSAL, JR. and DIGITAL:
COMMUNICATIONS ASSOCIATES, INC. :
_____

.0 72A

## ORDER

Notwithstanding the provisions of LR 300-4, NDGa., plaintiffs' counsel in this action are authorized to communicate with a prospective or actual class member or an attorney representing a prospective or actual class member who initiates contact with plaintiffs' counsel. For the purposes of this order, the term "class member[s]" shall refer to either actual or prospective class members except for the named class/subclass representatives.

Plaintiffs' counsel may not communicate with class members regarding the substance of this action except as provided by this order, other orders of this court, or other applicable provisions of the local rules.

### 1.

Plaintiffs' counsel may only respond in writing to all written inquiries made by class members or their counsel.

### 2.

Plaintiffs' counsel may only respond to oral inquiries by requesting the class member to submit a written inquiry.

### 3.

Plaintiffs' counsel shall maintain a log of all such oral inquiries containing the date and the identity of the participants in the conversation.

4.

Plaintiffs' counsel shall also maintain any copies of all correspondence between themselves and class members.

5.

Neither the parties nor their counsel may solicit class members either to participate or not to participate in this action as class members, except pursuant to communications expressly approved in advance by the court.

6.

Notwithstanding the previous provision, plaintiffs' counsel may, in writing, contact only those class members who have previously contacted them for the limited purpose of locating an adequate class representative for the subclass of purchasers of DCA stock who purchased their stock between August 30 and November 30, 1988.

7.

The provisions of subparagraphs (d) and (e) of LR 300-4, NDGa. shall continue to apply to all communications by counsel with class members in this action.

23

8.

The provisions of this order shall apply only through the expiration of the time within which exclusion requests may be filed under Fed. R. Civ. P. 23(c)(2). After such time, plaintiffs and their counsel shall not be limited in their communications with class members, except to the extent these communications will continue to be limited by the provisions of subparagraphs (d) and (e) of LR 300-4, NDGa.

9.

Except for the provisions of subparagraphs (d) and (e) of LR 300-4, NDGa., nothing in this order or in LR 300-4, NDGa. shall limit communication between class counsel and the named plaintiffs or with any other clients of their respective firms concerning this action.

SO ORDERED, this _2C_ day of December, 1990.

RICHARD C. FREEMAN
UNITED STATES DISTRICT JUDGE

24