IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
THOMAS W. THRASH JR.
U.S.D.C. Atlanta

AUG 28 1998

LUTHER D. THOMAS, Clerk
By: /s/
Deputy Clerk

IN RE VALUJET, INC. SECURITIES
LITIGATION,

CIVIL ACTION FILE
NO. 1:96-CV-1355-TWT

THIS DOCUMENT RELATES TO ALL
ACTIONS,

## ORDER

This is a class action securities fraud case. It is before the Court on the Plaintiffs' Motion for Class Certification [Doc. 21]. As set forth below, the Plaintiffs have carried their burden of showing that this is an appropriate case for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Accordingly, the Motion for Class Certification should be granted.

## I. BACKGROUND

The Plaintiffs seek an order certifying this action as a class action with respect to the following class:

> All persons and entities who purchased the common stock of ValuJet, Inc. and/or ValuJet Airlines, Inc. (hereinafter referred to collectively as "ValuJet") during the period from June 9, 1995, through June 17, 1996, inclusive ("Class Period"). Excluded from the Class are the Defendants herein, members of the immediate family of each of the individual Defendants, any entity in which any Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.

During the Class Period, more than 54 million shares of ValuJet stock were issued and outstanding. The exact number of potential class members is not known to Plaintiffs at this time, but it is

estimated to be several thousand. Plaintiffs claim to be similarly situated with the class they propose to represent in that they claim that they have purchased ValuJet stock at artificially inflated prices as a result of misrepresentations made by the Defendants in the Company's public filings, public statements and press releases.

Plaintiffs contend that during the Class Period the Defendants made positive statements about ValuJet in public filings, press releases and newspaper articles which the Defendants knew would be conveyed to the investing public and would have a favorable effect upon ValuJet stock. Plaintiffs contend that Defendants made false statements concerning ValuJet's safety record and maintenance practices, its compliance with federal regulations and its ability to continue its profitability and expansion into new markets. As a result, the value of the Company's stock was artificially inflated throughout the Class Period. Plaintiffs contend that the Defendants made these false statements and misrepresentations in order to enhance the effectiveness of an April 1996 private placement of $150 million of debt securities; to maintain and increase the value of their stock holdings, stock options and incentive bonuses; to perpetuate the appearance of ValuJet as a growth company with excellent future prospects; and in the case of some individual Defendants to profit from insider trading of ValuJet stock.

Defendant ValuJet was a self-described low-fare, no frills passenger airline providing point-to-point service in relatively high density markets. The Company began operations in October of 1993, and quickly became popular because of its low fares. Prior to mid-1996, ValuJet experienced tremendous growth and enjoyed remarkable earnings performance due to substantial increases in revenues and profits. The Complaint alleges that throughout this period, the Defendants engaged in a systematic scheme to publicly portray ValuJet as a low cost, no-frills, safe airline which was

-2-

attractive to the investment community. Specifically, the Complaint alleges that the Defendants claimed that the Company did not "skimp on maintenance" and that it "exceed[ed] all [safety] standards;" that it was "focus[ed] on operating a safe ...airline;" that it "[spent] whatever [was] appropriate to achieve the highest level of safety;" and had a safety record that was "certifiably among the very best in the airline industry."

Plaintiffs contend that at the time these statements were made, the Defendants had access to non-public information that clearly rendered these statements untrue. Plaintiffs contend that the Defendants failed to disclose that ValuJet had a voluminous history of safety violations caused, in part, by its failure to properly supervise the 56 different independent contractors it hired to perform heavy aircraft maintenance. The alleged safety violations included use of mechanics who repaired jet engines without the necessary training and tools; use of mechanics who were incapable of properly servicing ValuJet airplanes because of missing or out-of-date maintenance and repair manuals; and financial incentives for employees to complete flights regardless of risk, resulting in flights that continued on to destinations despite gear problems or perilously low fuel tanks.

In addition to knowledge of these safety problems through their operation of the airline, Plaintiffs contend that the Defendants also received outside reports reflecting the safety problems of the airline. For example, an August 1995, inspection of ValuJet by the Department of Defense resulted in unsatisfactory evaluations of maintenance manuals, records and quality assurance. In February of 1996, the Federal Aviation Administration sent the Company a letter which detailed safety problems and commented on ValuJet's "corporate policies that have created a culture that is affecting and influencing the ability of aircraft captains to make safety oriented decisions." This

letter came after an intense FAA investigation conducted by the agency due to several accidents and concerns regarding the rate at which the Company was adding additional aircraft and flights.

Plaintiffs contend that the Defendants also misrepresented ValuJet's ability to continue its record growth by expanding into new markets. Contrary to its public statements, the Company's poor safety and maintenance record forced the FAA in February of 1996, to place a moratorium on the Company's plans for expanded service. Without the approval of the FAA, ValuJet was limited to flying to the cities it then served with only the aircraft that it had in operation at that time. Plaintiffs contend that the Defendants decided to keep the public in the dark about the FAA's action and continued to make announcements concerning expanded service.

On May 11, 1996, ValuJet Flight 592 from Miami to Atlanta crashed in the Florida Everglades shortly after takeoff. All 110 passengers were killed. Following the crash, ValuJet continued to misrepresent the Company's safety and maintenance record and continued to withhold from the public the findings and actions of the FAA. On June 17, 1996, after the close of trading, ValuJet announced that it was temporarily ceasing operations pursuant to an agreement with the FAA. The agreement provided that ValuJet would not resume operations until it presented a comprehensive plan to correct what the FAA considered to be "serious deficiencies" in its maintenance and training programs. During the Class Period, ValuJet common stock traded as high as $34.75. On June 18, 1996, the stock closed at $6.50 a share.

In a previous order, the Court denied the Defendants' Motion to Dismiss. The Court has appointed seven Plaintiffs to serve as lead Plaintiffs. Each Plaintiff purchased shares of ValuJet common stock in the open market during the Class Period. The lead Plaintiffs have suffered losses ranging from approximately $42,000 to over $484,000. They contend that their collective losses are

at least $1.3 million. They seek to represent a class of thousands of individuals and institutions who they claim have been damaged in the tens of millions of dollars by the Defendants' fraudulent conduct.

## II. DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure sets forth four prerequisites to maintain any claim as a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In this case, the Plaintiffs must also convince the Court that:

> [T]he questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

The courts have generally followed a policy of liberal construction of Rule 23 in the context of federal securities fraud actions. See Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir.), cert. denied sub nom., Wasserstrom v. Eisenberg, 474 U.S. 946 (1985); Kennedy v. Tallant, 710 F.2d 711, 717-18 (11th Cir. 1983). In a doubtful case, it is better to allow the case to proceed as a class action. Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1968), cert. denied, 394 U.S. 928 (1969). The

-5-

Eleventh Circuit has explicitly recognized that securities class actions serve both the public interest in maintaining the integrity of the securities markets and the private interests of investors who would not otherwise obtain redress of grievances through a multiplicity of small individual damage suits. Kirkpatrick v. J. C. Bradford & Co., 827 F.2d 718, 727 (11th Cir. 1987), cert. denied sub nom, Robinson Humphrey/American Express v. Sanders, 485 U.S. 959 (1988). The Court must accept the allegations in the Complaint as being true in considering class certification. Furthermore, the Court may not deny class certification based upon a preliminary assessment of the Plaintiffs' likelihood of success on the merits. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974); Kirkpatrick, 827 F.2d at 723.

The Defendants correctly point out that the burden of proof is on the party seeking class certification. Heaven v. Trust Co. Bank, 118 F.3d 735, 737 (11th Cir. 1997). They contend that a "rigorous analysis" of the facts must be undertaken in determining whether to certify a class. See General Telephone Co. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). The Defendants contend that the Plaintiffs have failed to demonstrate that common issues predominate over individual issues; that the proposed Class Period is overly broad; and that the proposed Plaintiffs are inadequate and atypical class representatives. The Defendants do not contest the Plaintiffs' showing as to the numerosity and common questions of law and fact prerequisites of Rule 23(a). Accordingly, the Court finds that the numerosity and common questions of law and fact requirements of Rule 23(a) have been met.

A. Predominance of Common Issues.

Rule 23(b)(3) provides that the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. It is

not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions. Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1557 (11th Cir.), cert. denied 479 U.S. 883 (1986). In this case, the Plaintiffs have alleged a series of misrepresentations and omissions. Plaintiffs claim that ValuJet and the individual Defendants issued a series of public statements and reports which were false and misleading regarding ValuJet's safety record and growth capabilities. Plaintiffs claim that the Company's common stock was artificially inflated because of these representations. The claims of each member of the class arise out of this same set of operative facts. The legal questions common to each member of the class are whether the alleged misrepresentations constitute federal securities fraud and/or negligent misrepresentation under Georgia law. The facts alleged by the Plaintiffs are sufficient to satisfy the requirement that common questions of law and fact predominate over individual questions. A finding to the contrary would be inconsistent with the overwhelming majority of the published decisions in this area.

The Defendants argue that "the ever-shifting array of information present in the marketplace and allegedly known to the Defendants at any given point over the one-year Class Period makes it impossible for common issues to predominate over individual issues, as required by Fed. R. Civ. P. 23(b)(3)." (Defendants' Memorandum of Law, at. 6). Defendants rely upon cases such as Gelman v. Westinghouse Electric Corp., 73 F.R.D. 60 (W.D. Pa. 1976). It appears to the Court that the analysis in Gelman is fundamentally flawed. The court in Gelman concluded that common questions did not predominate because "plaintiffs' claims are based not on a single or substantially constant misdeed, but rather on a changing, fluctuating series of alleged events...." Gelman, 73 F.R.D. at 67. However, Rule 23(b)(3) does not limit class actions to a single or substantially constant misdeed.

A class action may be maintained with respect to a series of misdeeds if the claims of the class members all arise out of the same actions by the defendants. In this case, the Plaintiffs' claims essentially involve allegations that the Defendants committed the same unlawful acts in the same method against the entire class. Controlling Eleventh Circuit precedent says that this is sufficient to satisfy Rule 23(b)(3). See Kennedy, 710 F.2d at 717; Kirkpatrick, 827 F.2d at 724. The Defendants' reliance upon Amchem Products, Inc. v. Windsor, __ U.S. __, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) is also unavailing. The Supreme Court there expressly stated that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." Id., 117 S.Ct. at 2250. Plaintiffs have met their burden of showing that common issues predominate over individual questions and that a class action is superior to other available means for the fair and efficient adjudication of the controversy.

B.  Breadth of the Proposed Class Period.

The Class Period proposed by the Plaintiffs is from June 9, 1995 through June 17, 1996. There is no inherent or *per se* problem in a class period of one year. However, the Defendants object to the length of the proposed Class Period on the grounds that the FAA made no attempt to limit ValuJet's growth prior to February of 1996. The Plaintiffs seek to recover damages for a series of misrepresentations and omissions which they allege began in June of 1995. The timing of the FAA's actions has no special relevance to the issue of when the Defendants began their allegedly fraudulent conduct. Therefore, the Defendants' argument has no merit.

The Defendants also argue that the Company's safety and maintenance problems were the subject of numerous published reports between June of 1995 and February of 1996. Accordingly, they argue that they could not have been guilty of a fraud on the market during that period. As noted

previously, the Court must not engage in an evaluation of the merits under the guise of determining class certification. Whether there was a fraud on the market during some or all of the proposed Class Period requires the sort of factual analysis that the Supreme Court has held must be reserved for a hearing on the merits. See Basic, Inc. v. Levinson, 485 U.S. 224, 249 n. 29, 108 S.Ct. 978, 992 n.29, 99 L.Ed. 194 (1988). For these reasons, the Defendants' objections to class certification on the grounds that the proposed Class Period is overbroad are without merit.

C. <u>Typical and Adequate Class Representation</u>.

Rule 23 requires that the claims of the class representatives must be typical of the claims of the class. The Defendants oppose class certification on the grounds that the Lead Plaintiffs are subject to "unique defenses." It is not clear what these "unique defenses" consist of and how they could defeat a fraud on the market case such as this one. In any event, the existence of an arguable unique defense alone is not sufficient to defeat class certification. The standard for judging typicality is set forth in Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332 (11th Cir. 1984) where the court held:

> A class representative's claims or defenses must be typical of the claims or defenses of the class. In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

Id., 741 F.2d at 1337 (citation omitted). The named Plaintiffs have shown that their claims arise from the same events and pattern of misrepresentations and omissions as those of the class they seek

to represent. The fact that their claims may not arise out of identical factual circumstances is insufficient to deny class certification.

Finally, the Defendants argue that the Lead Plaintiffs are inadequate class representatives because they are unfamiliar with the allegations of the Complaint and are unfamiliar with, unwilling to or unable to discharge their obligations as class representatives. No useful purpose would be served in addressing the Defendants' arguments as to each of the proposed class representatives. The basic flaw of the Defendants' analysis is that the alleged deficiencies of the proposed class representative are irrelevant in a fraud on the market case such as this which is prosecuted by able and experienced counsel. The legal standard for adequacy of class representation is well established in the Eleventh Circuit. The standard involves inquiry into questions of whether Plaintiffs' counsel are qualified, experienced and generally able to conduct the litigation and whether the named Plaintiffs have interests antagonistic to those of the rest of the class. Kirkpatick, 827 F.2d at 726; Griffin v. Carlin, 755 F.2d 1516, 1532 (11th Cir. 1985).

The Defendants, quite properly, raise no question as to the qualifications, experience and ability of Plaintiffs' counsel. There is no evidence that the interests of the named Plaintiffs are antagonistic to those of the rest of the class. The Defendants argue that the named Plaintiffs have abdicated prosecution of this action to their counsel. However, "adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that they will individually pursue with vigor the legal claims of the class." Kirkpatick, 827 F.2d at 727. The deposition testimony submitted by both parties reveals that the named Plaintiffs have taken an appropriate interest in the litigation and are playing an appropriate role in its prosecution. The fact that they are allowing their counsel to prosecute the case demonstrates the exercise of good judgment

and not abdication. The Plaintiffs have met their burden under Rule 23 of showing that they will fairly and adequately protect the interests of the class.

## II. CONCLUSION

For the reasons set forth above, the Plaintiffs' Motion for Class Certification [Doc. No. 21] is GRANTED.

SO ORDERED, this ___ day of August, 1998.

THOMAS W. THRASH, JR.
United States District Judge

**ENTERED ON DOCKET**

AUG 3 1 1998

BY   L.D.T., CLERK
     DEPUTY CLERK