**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE IMMUCOR, INC. SECURITIES LITIGATION | CIVIL ACTION NO. 1:05-CV-2276-WSD |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**I.   INTRODUCTION**

Plaintiffs submit this application for preliminary approval of a proposed settlement in this securities class action brought on behalf of all persons and entities who purchased or otherwise acquired Immucor, Inc. ("Immucor" or the "Company") common stock commencing on August 16, 2004 and extending to and through August 29, 2005 (the "Class Period"). Plaintiffs assert claims against Immucor and three of its top executives, Edward L. Gallup, Dr. Gioacchino De Chirico and Steven C. Ramsey[1] (Immucor, Edward L. Gallup, and Dr. Gioacchino de Chirico are collectively referred to as the "Defendants"). The settlement will resolve all of Plaintiffs' claims against Defendants during the Class Period.

---

[1] Mr. Ramsey passed away during the pendency of Defendants' Motion to Dismiss, and Plaintiffs filed a notice of voluntary dismissal as to Mr. Ramsey.

1

Under the terms of the Settlement, Defendants will pay $2.5 million in cash (the "Settlement Fund"). The compromise is set forth in the Stipulation of Settlement dated May 14, 2007 ("Settlement Stipulation").[2] The Settlement Stipulation contains all the material terms of the Settlement, including the manner and form of notice to be given to the Class, the contingencies or conditions to the Settlement's final approval, and other terms.

In determining whether preliminary approval is warranted, the issue before the Court is whether the Settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the Settlement should be given to Class Members, and a hearing scheduled to consider final settlement approval. The Court is not required at this point to make a final determination as to the fairness of the Settlement. As stated in the Manual for Complex Litigation (Third) § 23.14, at 171 (West ed. 1995):

> First, the court reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.

The Manual for Complex Litigation (Third) defines the Court's duty as follows:

---

[2] A proposed order granting the relief requested herein (the "Preliminary Approval Order") is attached to the Settlement Stipulation as Exhibit A and is also attached to the Motion for Preliminary Approval of Class Action Settlement as Exhibit 1.

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Id.* § 30.41, at 237; *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) §§ 21.632-21.633, at 320-21 (Moore's ed. 2004) ("Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation. . . . Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members.").

Because the Settlement meets the foregoing criteria and is well within the range of what might be approved as fair, reasonable, and adequate, Plaintiffs ask this Court to enter an Order: (1) granting preliminary approval of the Settlement; and (2) directing that the Class be given notice of the pendency of this action and the Settlement, in the form and manner proposed by the parties.[3]

---

[3] At the Final Fairness Hearing, the Court will consider the motion for final approval of the Settlement and entry of the parties' proposed final order and judgment, as well as any objections to Plaintiffs' application for an award of attorneys' fees and

## II.     BACKGROUND OF THE LITIGATION

From August through October 2005, a series of ten securities class action lawsuits were filed in the United States District Court for the Northern District of Georgia (the "Court") against Immucor, Inc. ("Immucor") and certain of its officers and directors. By Order dated December 20, 2005, these actions were consolidated for all purposes under the caption *In re Immucor, Inc. Securities Litigation*, Civil Action No. 1:05-cv-02276-WSD (the "Litigation"). On December 30, 2005, the Court appointed Lead Plaintiffs under Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act") and approved Lead Plaintiffs' selection of Lead Counsel pursuant to Section 21D(a)(3)(B)(v) of the Exchange Act.

Following the appointment of Lead Plaintiffs, the Consolidated Class Action Complaint ("Complaint") was filed on February 7, 2006. The Complaint alleges that Immucor and the individual defendants Edward L. Gallup, Dr. Gioacchino De Chirico and Steven C. Ramsey made false and misleading statements during the Class Period that understated the scope and gravity of potential Foreign Corrupt Practices Act ("FCPA") violations by Immucor's Italian Subsidiary. Lead Plaintiffs allege claims under §§10-b and 20(a) of the Exchange Act. Thereafter, Defendants

---

reimbursement of costs and Plaintiffs' application for reimbursement of time and expenses for the Lead Plaintiffs.

filed a motion to dismiss the Complaint.  On October 4, 2006, the Court issued an order denying (in the main) Defendants' motion to dismiss.  On October 19, 2006, Defendants filed their Answer and Defenses to the Complaint.  On December 1, 2006, the Court entered a Discovery Scheduling Order.  Thereafter, the parties participated in formal discovery.  Lead Plaintiffs filed their motion for class certification on January 22, 2007.  On February 28, 2007, the parties participated in mediation with the Honorable Herbert M. Stettin.  Shortly after mediation, and with the continued assistance of the mediator, the parties reached an agreement-in-principle to settle the Litigation.

## III.  PRELIMINARY SETTLEMENT APPROVAL

### A.  The Standard For Preliminary Approval of a Settlement Agreement

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive court approval.  When considering a proposed class action settlement, courts routinely apply a two-step approach.  In the first step -- often called preliminary approval -- the court reviews the proposed settlement for obvious deficiencies, schedules a fairness hearing, and directs that the class be provided with notice of the proposed settlement and the hearing.  *See In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("In considering preliminary approval, courts make a preliminary evaluation of the fairness of the

settlement, prior to notice."). In the second step, the court considers the final approval of the proposed settlement at a formal fairness hearing where arguments and evidence may be presented in support of, and in opposition to, the settlement. *See NASDAQ*, 176 F.R.D. at 102; MANUAL FOR COMPLEX LITIGATION (THIRD) § 23.14.

Preliminary approval of a class action settlement lies within the sound discretion of the court. *See In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000); *Behring Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). When considering the proposed settlement, the court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.633. *Cf. Sterling v. Stewart,* 158 F.3d 1199, 1203-1204 (11th Cir. 1998); *In re NASDAQ*, 176 F.R.D. at 102. It is well-settled that a settlement should be approved if it is "fair, adequate, reasonable, and free of fraud or collusion." *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The court is not required to make a final determination that the settlement is fair and reasonable, nor will any class member's substantive rights be prejudiced by granting preliminary approval. *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209

(S.D.N.Y. 1995) ("The Court's function now is 'to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'") (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980)).

Settlements of class actions are "highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 401 (1977)(citations omitted). As a matter of public policy, courts in the Eleventh Circuit favor the settlement of class action and shareholder litigation. *See In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("public policy strongly favors the pretrial settlement of class action lawsuits"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993) (quoting *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982)). As explained by the Court in *Bennett*:

> This policy has special importance in class actions with their notable uncertainties, difficulties of proof, and length. Settlement of complex cases contribute greatly to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice for a "just result is often no more than an arbitrary point between competing notions of reasonableness."

118 F.R.D. at 538 (citations omitted).[4]

As set forth below, the proposed Settlement merits preliminary approval and warrants notice apprising Class Members of the Settlement.

> **B.     The Proposed Settlement Falls Squarely Within the Range of Reasonableness and Merits Preliminary Approval**
>
> > **1.     The Settlement Agreement Resulted From Mediation and Arm's-Length Negotiations**

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations. *See* 2 Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 at 11-88 (3d ed. 1992); *see also* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42. Such negotiations between counsel possessed of "experience and ability . . . necessary to effective representation of the class's interests," ensure fair resolution. *Id*. *See also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000); *Domestic Air Trans.*, 148 F.R.D. at 312-13. It is well-established that significant weight should be attributed to the belief of experienced counsel that settlement is in the best interests of the class. *See In re Domestic Air Trans.*, 148

---

[4] *See also In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990) ("Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence as well as the arm's-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive.") (citations omitted).

F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the court is entitled to rely upon the judgment of the parties' experienced counsel.").

With the assistance of the Honorable Herbert M. Stettin as an independent mediator on February 28, 2007, Lead Plaintiffs, by their counsel, have conducted discussions and arm's-length negotiations with counsel for Defendants with respect to a compromise and settlement of the Litigation with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Class.

Based upon their investigation and pretrial discovery, the discovery conducted to date, and the mediation session before Judge Stettin, Lead Counsel have concluded that the terms and conditions of the Settlement Stipulation are fair, reasonable and adequate to the Lead Plaintiffs and the Class, and in their best interests, and have agreed to settle the claims raised in the Litigation pursuant to the terms and provisions of the Settlement Stipulation, after considering (a) the substantial benefits that Lead Plaintiffs, as well as the members of the Class, will receive from settlement of the Litigation, (b) the attendant risks of litigation, and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of the Settlement Stipulation.

### 2. The Settlement Has No Obvious Deficiencies, Such as Preferential Treatment of the Lead Plaintiffs, Or Segments of the Class Or Excessive Compensation For Attorneys

The proposed settlement has no obvious deficiencies. It provides for payment of $2.5 million in cash ("Settlement Fund"), which constitutes a significant recovery for the Class members. The settlement provides no preferential treatment for Lead Plaintiffs. Lead Plaintiffs will receive distributions from the settlement proceeds calculated in the same manner as the distributions to all other Class members.[5]

Moreover, the settlement does not mandate excessive compensation for Plaintiffs' Co-Lead Counsel. The Settlement Stipulation authorizes Plaintiffs' Co-Lead Counsel to apply for an award of attorneys' fees of an amount not to exceed 25% of the $2.5 million settlement fund and for reimbursement of expenses, plus interest (*see* Settlement Stipulation ¶ 6.1 and Notice (Ex. A to Settlement Stipulation) at p.2). The Settlement Stipulation also authorizes Plaintiffs' Co-Lead Counsel to apply for reimbursement to the Lead Plaintiffs for their reasonable time and expenses directly relating to their representation of the Class. *See id.* Any award of fees and expenses is subject to Court approval.

---

[5] Lead Plaintiffs may seek reimbursement for their expenses incurred in representing the Class as allowed under the Private Securities Litigation Reform Act of 1995.

### 3.     The Settlement Falls Within The Range of Possible Approval

As explained above, the proposed $2.5 million Settlement was reached after arm's-length negotiations between the parties through consideration of the advantages and disadvantages of continued litigation.  Lead Counsel, who have a great deal of experience in the prosecution and resolution of complex class action securities litigation, have carefully evaluated the merits of this case and the proposed Settlement.  Even if the matter were to proceed to trial, Lead Counsel know from experience that the apparent strength of a plaintiff's case is no guarantee against a defense verdict.  Furthermore, even if a judgment were obtained against Defendants at trial, the recovery might be no greater, and indeed might be less, than the $2.5 million provided by the proposed Settlement.

If the Settlement is granted final approval, the $2.5 million (plus interest) will first be applied to notice and administration costs, expenses and any award of attorneys' fees and costs to Lead Counsel, and remaining administration expenses. Lead Plaintiffs propose that the balance of the settlement fund -- the Net Settlement Fund -- be distributed among all Class Members who submit timely and valid proofs of claim -- Authorized Claimants -- pursuant to a Plan of Allocation set forth in the proposed Notice.

Lead Counsel designed the Plan of Allocation in consultation with their damages expert. The proposed Plan of Allocation is based on Lead Plaintiffs' theory of the case and reflects Lead Plaintiffs' contention that the price of Immucor common stock was artificially inflated during the Class Period by various amounts as certain disclosures were made. Moreover, there is no reason to doubt the fairness of the proposed Plan of Allocation for purposes of preliminary approval. Even at the final-approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001).

In light of the above considerations, the proposed Settlement as a whole falls within the range of possible final approval. The Court should therefore grant preliminary approval of the Settlement and direct that notice of it be given to Members of the Class.

## IV. THE PROPOSED NOTICE IS ADEQUATE

Federal Rule of Civil Procedure 23(c)(2)(B) says, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e)(B) similarly says, "[t]he

court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

The due process clause requires that in a class action, notice of the settlement and an opportunity to be heard must be given to absent class members. *Cf. Mashburn v. Nat'l Healthcare Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("This Court is of the opinion that the notice given to members of the plaintiff class by publication and by mail, as aforesaid, complied with all the requirements of due process, all requirements of Rule 23 of the Federal Rules of Civil Procedure, and constituted the best notice practicable under the circumstances.") Thus, the proposed method of notice comports with Rule 23 and the requirements of due process. *See, e.g., In re Domestic Air Trans. Antitrust Litig.*, 141 F.R.D. 534, 550-51 (N.D. Ga. 1992) (providing that notice by mail to those class members who could be identified and by publication only to those who could not be identified satisfies due process requirements).

Here, the parties have negotiated the form of a notice (the "Notice") to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified from Immucor's transfer records. The parties further propose to supplement the mailed Notice with a summary notice (the "Summary Notice"), published in the *Investor's Business Daily*. The Notice and

Summary Notice are attached to the Settlement Stipulation as Exhibits 1 and 3 to Exhibit A.

As for the content of the Notice, Rule 23(c)(2)(B) provides:

The notice [to a Rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language:

- the nature of the action,

- the definition of the class certified,

- the class claims, issues, or defenses,

- that a class member may enter an appearance through counsel if the member so desires,

- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

Where notice is being sent in connection with a proposed settlement, the notice must also inform class members of the terms of the settlement and their options with respect thereto.  *See Domestic Air Trans.,* 141 F.R.D. at 553-555; *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1103-05 (5th Cir. 1997). Furthermore, where a settlement notice is being sent in a securities class action, the Private Securities Litigation Reform Act requires the notice to state (1) "[t]he

amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) [t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members . . ."; (5) and "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. § 78u-4(a)(7). In addition, the notice must have a cover page summarizing the above information. *See id.*

      The proposed form of Notice describes the nature, history and status of the litigation; sets forth the definition of the Class; states the class claims and issues; discloses the right of people who fall within the definition of the Class to exclude themselves from it, as well as the deadline and procedure for doing so and warns of the binding effect of the settlement approval proceedings on people who stay in the

Class. In addition, the Notice describes the Settlement and sets forth the $2.5 million amount of the settlement fund and the portion that Lead Plaintiff proposes to distribute among the Class, both in the aggregate and on an average per-share basis; explains the proposed Plan of Allocation; states the parties' disagreement over damages; sets out the maximum amount of attorneys' fees and expenses that Lead Counsel intend to seek in connection with final settlement approval, including the maximum amount of the requested fees and expenses determined on an average per-share basis; provides contact information for Lead Counsel; and summarizes the reasons the parties are proposing the Settlement. The Notice also discloses the date, time, and place of the formal fairness hearing, and the procedures for commenting on the Settlement and appearing at the hearing. The contents of the Notice therefore satisfy all applicable requirements.

Accordingly, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Class.

## V.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully ask that the Court grant preliminary approval of the proposed Settlement and enter the proposed Preliminary Order in Connection with Settlement Proceedings, submitted herewith.

Respectfully submitted this 14th day of May, 2007.

**CHITWOOD HARLEY HARNES LLP**

By: /s/ Meryl W. Edelstein
    Martin D. Chitwood, Ga. Bar No. 124950
    Gregory E. Keller, *Admitted Pro Hac Vice*
    Robert W. Killorin, Ga. Bar No. 417775
    Meryl W. Edelstein, Ga. Bar No. 238919
    2300 Promenade II
    1230 Peachtree Street, NE
    Atlanta, GA 30309
    Tel: (404) 873-3900
    Fax: (404) 876-4476
    E-mail: MEdelstein@chitwoodlaw.com
    E-mail: MChitwood@chitwoodlaw.com
    E-mail: RKillorin@chitwoodlaw.com
    E-mail: GKeller@chitwoodlaw.com

**LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS, LLP**
Jack Reise
Douglas Wilens
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000
Fax: (561) 750-3364

**LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP**
Jeffrey D. Light
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: (619) 231-1058
Fax: (619) 231-7423

Co-Lead Counsel for Lead Plaintiffs

## **LOCAL RULE 7.1D CERTIFICATION**

Counsel for plaintiffs hereby certifies that the text of this brief has been prepared with Times New Roman 14 point, one of the fonts and point selections approved by the Court in Local Rule 5.1B.

   /s  Meryl W. Edelstein
Meryl W. Edelstein
Georgia Bar No. 238919
**CHITWOOD HARLEY HARNES LLP**

# CERTIFICATE OF SERVICE

This is to certify that I have on this day serve a true and correct copy of the within and foregoing "**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**" with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

> Jeffrey O. Bramlett
> Corey F. Hirokawa
> Tiana S. Mykkeltvedt
> **BONDURANT, MIXSON & ELMORE, LLP**
> 3900 One Atlantic Center
> 1201 W. Peachtree Street
> Atlanta, GA 30309

This 14th of May 2007.

                                             s/ Meryl W. Edelstein
                                             Meryl W. Edelstein
                                             Georgia Bar No. 238919

**CHITWOOD HARLEY HARNES LLP**
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Tel: (404) 873-3900
Fax: (404) 876-4476
E-mail: MEdelstein@chitwoodlaw.com