UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| | x | |
| In re IMMUCOR, INC. SECURITIES LITIGATION | : | Civil Action No. 1:05-cv-02276-WSD |
| | : | |
| | : | CLASS ACTION |
| | : | |
| This Document Relates To: | : | |
| | : | |
| ALL ACTIONS. | : | |
| | : | |
| | x | |

STIPULATION OF SETTLEMENT

This Stipulation of Settlement entered into as of May 14, 2007 (the "Stipulation"), is made and entered into by and among the following Settling Parties (as defined further in Section IV hereof): (i) the Lead Plaintiffs (on behalf of themselves and each of the Class Members), by and through their counsel of record, and (ii) the Defendants identified below, by and through their counsel of record in the Litigation. The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge and settle the Released Claims upon and subject to the terms and conditions hereof.

## I.    THE LITIGATION

From August through October 2005, a series of ten securities class action lawsuits were filed in the United States District Court for the Northern District of Georgia (the "Court") against Immucor, Inc. ("Immucor") and certain of its officers and directors. By Order dated December 30, 2005, these actions were consolidated for all purposes under the caption *In re Immucor, Inc. Securities Litigation*, Civil Action No. 1:05-cv-02276-WSD (the "Litigation"). On December 30, 2005, the Court appointed Lead Plaintiffs under Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act") and approved Lead Plaintiffs' selection of Lead Counsel pursuant to Section 21D(a)(3)(B)(v) of the Exchange Act.

- 1 -

Following the appointment of Lead Plaintiffs, the Consolidated Class Action Complaint ("Complaint") was filed on February 2, 2006. The Complaint alleges that Immucor and the individual defendants Edward L. Gallup, Dr. Gioacchino De Chirico and Steven C. Ramsey made false and misleading statements during the Class Period that understated the scope and gravity of potential Foreign Corrupt Practices Act ("FCPA") violations by Immucor's Italian subsidiary. Lead Plaintiffs allege claims under §§10(b) and 20(a) of the Exchange Act. Thereafter, Defendants filed a motion to dismiss the Complaint.[1] On October 4, 2006, the Court issued an order denying (in the main) Defendants' motion to dismiss. On October 19, 2006, Defendants filed their answer and defenses to the Complaint. On December 1, 2006, the Court entered a Discovery Scheduling Order. Thereafter, the parties participated in formal discovery. Lead Plaintiffs filed their motion for class certification on January 22, 2007. On February 28, 2007, the parties participated in mediation with the Honorable Herbert Stettin. Shortly after mediation, and with the continued assistance of the mediator, the parties reached an agreement-in-principle to settle the Litigation.

---

[1]    Mr. Ramsey passed away during the pendency of Defendants' Motion to Dismiss, and Lead Plaintiffs filed a notice of voluntary dismissal as to Mr. Ramsey.

## II.  DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Defendants deny that the claims have any merit and contest many of the contentions alleged by the Lead Plaintiffs in the Litigation. The Defendants expressly deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation. The Defendants also have denied and continue to deny, *inter alia*, the allegations that the Lead Plaintiffs or Class Members have suffered damage, that the price of Immucor common stock was artificially inflated by reasons of alleged misrepresentations, non-disclosures, or otherwise, that the Lead Plaintiffs or Class Members can prove that any alleged statements caused their losses, or that the Lead Plaintiffs or the Class were otherwise harmed by the conduct alleged in the Litigation. The Defendants deny that Lead Plaintiffs' motion for class certification can or should be granted over Defendants' opposition.

Nonetheless, the Defendants have concluded that mounting a successful defense of the Litigation will likely be protracted, expensive, and disruptive to Immucor's business operations. The Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation. The Defendants have, therefore, determined that it is desirable and beneficial to Immucor

that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.    CLAIMS OF THE LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

The Lead Plaintiffs believe that the claims asserted in the Litigation have merit. However, counsel for the Lead Plaintiffs recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against the Defendants through trial and through appeals. Counsel for the Lead Plaintiffs also have taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in such litigation. Counsel for the Lead Plaintiffs also are mindful of the inherent problems of proof under and possible defenses to the violations asserted in the Litigation. Counsel for the Lead Plaintiffs believe that the settlement set forth in this Stipulation confers substantial benefits upon the Class and is in the best interest of the Class.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Lead Plaintiffs (for themselves and the Class Members) and the Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Litigation and the Released Claims shall be

- 4 -

finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows.

## 1.    Definitions

As used in the Stipulation the following terms have the meanings specified below:

1.1    "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2    "Claimant" means any Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.3    "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.4    "Class" means a class consisting of all Persons (other than those Persons who timely and validly request exclusion from the Class) who purchased Immucor common stock during the Class Period. Excluded from the Class are Defendants, members of the immediate family of any individual Defendant, any entity in which any Defendant has or had a controlling interest, current and former directors and officers of Immucor, and the legal representatives, heirs, successors, or assigns of any such Defendant.

1.5    "Class Member" or "Member of the Class" mean a Person who falls within the definition of the Class as set forth in ¶1.4 of the Stipulation. Insofar as a Class Member makes a proper and timely request for exclusion from the Class, he, she, or it shall not be considered a Class Member.

1.6    "Class Period" means the period commencing on August 16, 2004 and extending to and through August 29, 2005.

1.7    "Defendants" means Immucor, Edward L. Gallup and Dr. Gioacchino De Chirico.

1.8    "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred.

1.9    "Escrow Agent" means the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP or its successor(s).

1.10   "Final" means the later of: (a) if an appeal is filed, the date of final affirmance on an appeal of the Judgment, the expiration of the time for a petition for or a denial of a writ of certiorari to review the Judgment and, if certiorari is granted, the date of final affirmance of the Judgment following review pursuant to that grant; or (b) if an appeal is filed and dismissed, the date of final dismissal of any appeal from the Judgment or the final dismissal of any proceeding on certiorari to review the Judgment; or (c) if no appeal is filed, the business day following the expiration date of

- 6 -

the time for the filing or noticing of any appeal from the Court's Judgment approving the Stipulation substantially in the form and content of Exhibit B hereto, *i.e.*, thirty-one (31) days after entry of the Judgment. Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any plan of allocation and/or application for attorneys' fees, costs, or expenses, shall not in any way delay or preclude the Judgment from becoming Final.

1.11    "Judgment" means the judgment the parties propose to be entered by the Court substantially in the form and content attached hereto as Exhibit B.

1.12    "Lead Counsel" means Lerach Coughlin Stoia Geller Rudman & Robbins LLP and Chitwood Harley Harnes LLP.

1.13    "Lead Plaintiffs" means West Virginia Laborers' Pension Trust Fund, Western Washington Laborers-Employers Pension Trust, Penny Reno, Pedro Simoes and Marlin Cobb.

1.14    "Notice Order" means the Court's Order granting preliminary approval of the settlement and providing for notice to absent Class Members substantially in the form and content of Exhibit A attached hereto.

1.15    "Person" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated

association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.16 "Plaintiffs" means each of the plaintiffs who filed a complaint in the Litigation.

1.17 "Plaintiffs' Counsel" means all counsel who have appeared for any of the Plaintiffs in the Litigation.

1.18 "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund approved by the Court whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the settlement, Taxes and Tax Expenses and such attorneys' fees, costs, expenses, and interest as may be awarded by the Court. Any Plan of Allocation is not part of the Stipulation and Defendants shall have no responsibility or liability with respect thereto.

1.19 "Related Persons" means each Defendant's present and former officers, directors, employees, agents, representatives, attorneys, advisors, investment advisors, auditors, insurers and reinsurers, predecessors, heirs, successors, and assigns, and Immucor's present and former parents, subsidiaries and affiliates, and the respective present and former officers, directors, employees, agents, representatives, attorneys,

- 8 -

advisors, investment advisors, auditors, insurers and reinsurers, predecessors, heirs, successors, and assigns of each, and any person or entity in which any Defendant has or had a controlling interest or which is or was related to or affiliated with any Defendant.

1.20   "Released Claims" shall collectively mean all claims, demands, rights, losses, liabilities and causes of action of any nature whatsoever, whether known or unknown, whether suspected or unsuspected, whether concealed or hidden, whether direct or derivative, that have been or could have been asserted in the Litigation or in any other forum by any Lead Plaintiff, Plaintiff or Class Member (including, but not limited to claims for damages under the federal or state securities laws, misrepresentation, breach of fiduciary duty or other common law claims) claims for attorneys' fees or expenses of litigation (and "Unknown Claims" as defined in ¶1.26), against the Released Parties arising from or in any way related to the purchase of Immucor common stock during the Class Period and derived from the acts, facts, statements or omissions that could have been alleged in support of any such claim(s) and the Released Parties defenses.

1.21   "Released Parties" means each and all of the Defendants and their Related Persons.

1.22   "Settled Defendants' Claims" means all claims (including, but not limited to, "Unknown Claims" as defined in ¶1.26 hereof) arising from or related in any way to the purchase of Immucor common stock during the Class Period or the prosecution of any action or proceeding based on such claims (except for claims to enforce the provisions of the settlement).

1.23   "Settlement Fund" means the principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000) in cash, plus any interest accruing after the Due Date specified in ¶2.2.

1.24   "Settling Parties" means, collectively, each of the Defendants and the Lead Plaintiffs, both in their individual capacities and on behalf of all Members of the Class.

1.25   "Supplemental Agreement" means the agreement described in ¶7.5 hereof.

1.26   "Unknown Claims" means claims that any Lead Plaintiff or Class Member does not know or suspect to exist in his, her, or its favor arising from or in any way related to the purchase of Immucor common stock during the Class Period. This does not include any claim to enforce the provisions of the Settlement. Upon the Effective Date, Lead Plaintiffs and the Defendants shall expressly waive, and each of the Class Members shall be deemed to have, and by operation of the Judgment will

- 10 -

have, expressly waived the provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Settling Parties acknowledge, and the Class Members and the Released Parties shall be deemed by operation of the Judgment to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and is a key element of the settlement of which the releases are a part.

## 2. The Settlement

### a. The Settlement Fund

2.1    The principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000) (plus any interest accruing after the Due Date specified in ¶2.2) shall constitute the Settlement Fund and shall be paid or caused to be paid by Defendants into an interest bearing account maintained by the Escrow Agent in settlement of the Litigation.

2.2    The full payment shall be made within ten (10) business days following the Court's issuance of the Notice Order ("Due Date").   Any amount not so

contributed by the Due Date shall bear interest at the rate of 6% per annum, until the monies are deposited into the escrow account.

### b.    The Escrow Agent

2.3    The Escrow Agent shall invest the Settlement Fund deposited pursuant to ¶2.1 above in short-term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates. The Escrow Agent shall bear all risks related to investment of the Settlement Fund.

2.4    The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an order of the Court, or with the written agreement of counsel for Immucor and Lead Counsel, upon approval by the Court.

2.5    Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of Class Members as are consistent with the terms of the Stipulation.

2.6    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis*, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) or approval(s) of the Court.

- 12 -

2.7    The Settlement Fund, subject to Court approval, may be used by the Escrow Agent to pay costs and expenses reasonably and actually incurred in connection with providing notice to Class, locating Class Members, soliciting claims, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any.  The Claims Administrator shall submit expenses associated with the administration of the Settlement Fund in a timely manner so that expenses in a particular calendar year can be deducted from interest income earned in such calendar year.

### c.    Taxes

2.8    (a)    The Settling Parties and their counsel agree that the Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  Settling Parties and their counsel agree that the Settlement Fund should be treated as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.8, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the

- 13 -

Escrow Agent to timely and properly prepare and deliver the necessary documentation

for signature by all necessary parties, and thereafter to cause the appropriate filing to

occur.

       (b)    For the purpose of §468B of the Internal Revenue Code of 1986, as

amended, and the regulations promulgated thereunder, the "administrator" shall be the

Escrow Agent.  The Escrow Agent shall timely and properly file all informational and

other tax returns necessary or advisable with respect to the Settlement Fund

(including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)(1)).

Such returns (as well as the election described in ¶2.8) shall be consistent with this

¶2.8 and in all events shall reflect that all Taxes (including any estimated Taxes,

interest or penalties) on the income earned by the Settlement Fund shall be paid out of

the Settlement Fund as provided in ¶2.8(c) hereof.

       (c)    All: (i) Taxes (including any estimated Taxes, interest or penalties)

arising with respect to the income earned by the Settlement Fund, including any Taxes

or tax detriments that may be imposed upon the Defendants or their counsel with

respect to any income earned by the Settlement Fund for any period during which the

Settlement Fund does not qualify as a "qualified settlement fund" for federal or state

income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection

with the operation and implementation of this ¶2.8 (including, without limitation,

- 14 -

expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.8) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events neither the Defendants nor their counsel nor their insurers shall have any liability or responsibility for the Taxes or the Tax Expenses. The Escrow Agent shall indemnify and hold each of the Defendants and their counsel and their insurers harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither the Defendants, nor their insurers, nor their counsel are responsible, nor shall they have any liability therefor. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.8.

### d.    Termination of Settlement

2.9    In the event that the Stipulation is not approved, or is terminated, or the Effective Date does not occur, the Settlement Fund (including accrued interest) less any notice or administration expenses of the Settlement Fund approved or to be approved by the Court but which shall not exceed $100,000, shall be refunded to the Defendants or their assignee within ten (10) business days of delivery of written instructions from Defendants' counsel.

### 3.    Notice Order and Settlement Hearing

3.1    Promptly after execution of the Stipulation, the Settling Parties shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Notice Order"), substantially in the form and content of Exhibit A hereto, requesting, *inter alia*, the preliminary approval of the settlement set forth in the Stipulation, and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice (the "Summary Notice"), substantially in the form and content of Exhibits A-1 and A-3 hereto. The Notice shall include the general terms of the settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application as defined in ¶6.1 below and the date of the Settlement Hearing as defined below.

3.2    Lead Counsel shall request that after notice is given, the Court hold a hearing (the "Settlement Hearing") and approve the settlement of the Litigation as set forth herein, approve the proposed Plan of Allocation and receive shareholders' comments and/or objections to the Fee and Expense Application. In accordance with a schedule to be established by the Court, Lead Counsel also will request that the Court approve the Fee and Expense Application.

**4.    Releases**

4.1    Upon the Effective Date, as defined in ¶1.8 hereof, the Lead Plaintiffs, the Plaintiffs and each Class Member shall be deemed to have fully, finally, and forever released, relinquished and discharged all Released Claims whether or not such Class Member executes and delivers the Proof of Claim and Release.

4.2    Upon the Effective Date, as defined in ¶1.8 hereof, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged the Lead Plaintiffs, each and all of the Class Members, and their counsel, from all Settled Defendants' Claims.

**5.    Administration and Calculation of Claims, Final Awards
and Supervision and Distribution of the Settlement Fund**

5.1    The Claims Administrator, subject to such supervision and direction of the Court or Lead Counsel, as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall

- 17 -

oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants. The Settlement Fund shall be applied as follows:

(a)    to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, locating Class Members, soliciting Class claims, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms and paying escrow fees and costs, if any;

(b)    to pay the Taxes, Tax Expenses, and any applicable payment of or reserve for tax indemnity described in ¶2.8 above;

(c)    to the extent allowed by the Court, to pay to Lead Counsel attorneys' fees, expenses and costs plus the proportionate share of interest earned by the Settlement Fund (until paid) on such amounts as may be awarded by the Court; and

(d)    to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.2    Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement

Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

5.3    Within ninety (90) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 hereto, signed under penalty of perjury and supported by such documents as specified in the Proof of Claim and Release form and as are reasonably available to the Authorized Claimant. Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Lead Counsel deem to be non-substantive defects in any Proofs of Claim submitted in the interests of achieving substantial justice.

5.4    Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the Claimant in order to remedy the curable deficiencies in the Proofs of Claim submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons therefore, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires.

5.5    Except as otherwise ordered by the Court, all Class Members who fail to timely submit a Proof of Claim and Release form within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation and the settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment. Notwithstanding the foregoing, Lead Counsel may in their discretion, accept for processing late filed claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

5.6    The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court.

5.7    Except for their obligations: (a) to pay or cause payment as specified in ¶2.1; and (b) cooperate reasonably in directing Immucor's transfer agent to produce the information for the purpose of providing notice in accordance with Exhibit A hereto, the Defendants and the Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the selection or performance of the Escrow Agent or the Claims Administrator, the payment of attorneys' fees or expenses of litigation incurred by or on behalf of Lead Plaintiffs, Plaintiffs, or any

Member of the Class, the investment or distribution of the Settlement Fund, the Plan

of Allocation, the determination, administration, or calculation of claims, the payment

or withholding of Taxes, or any losses incurred in connection therewith.

5.8    No Person shall have any claim against Lead Counsel, Lead Plaintiffs,

Plaintiffs, any claims administrator, or Defendants or the Released Parties based on

the distributions made substantially in accordance with this Stipulation and the

settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.9    The Net Settlement Fund shall be distributed to the Authorized Claimants

substantially in accordance with a Plan of Allocation to be described in the Notice and

approved by the Court.  However, if there is any balance remaining in the Net

Settlement Fund after six (6) months from the date of distribution of the Net

Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise)

Lead Counsel shall reallocate such balance among Authorized Claimants in an

equitable and economic fashion.  Thereafter, any balance which still remains in the

Net Settlement Fund shall be donated to an appropriate non-profit organization at

Lead Counsel's discretion.

5.10    It is understood and agreed by the Settling Parties that any proposed Plan

of Allocation of the Net Settlement Fund including, but not limited to, any

adjustments to an Authorized Claimant's claim set forth therein, is not a part of the

- 21 -

Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the settlement set forth therein, or any other orders entered pursuant to the Stipulation.

**6.    Lead Counsel's Attorneys' Fees and Reimbursement of Expenses of Counsel and the Lead Plaintiffs**

6.1    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions to them from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of expenses and costs, incurred in connection with prosecuting the Litigation, including the proportionate share of interest earned by the Settlement Fund (until paid) as may be awarded by the Court. One of the Lead Plaintiffs, Mr. Cobb, may seek payment for his time in prosecuting the action. None of the other Lead Plaintiffs intend to seek payment for any time spent in connection with the case. Lead Counsel reserve the right to make additional applications for fees and expenses incurred. Lead Counsel, for themselves and all counsel who have represented Lead Plaintiffs, Plaintiffs, any Member of the Class, or any of them, acknowledge and agree that this Stipulation, by its terms, forecloses any basis to seek attorneys' fees or expenses of litigation directly from the Defendants or

- 22 -

their insurers and concede that counsel for the Class or any of its members must look solely to the Settlement Fund for any recovery of fees and expenses.

6.2    The attorneys' fees, expenses, and costs, including the fees of experts and consultants, as awarded by the Court, shall be payable to Lead Counsel from the Settlement Fund. Subject to Court approval, the Settling Parties agree that all or part of the attorneys' fees and expenses awarded by the Court shall be paid on such schedule as is set forth in the Court's order concerning attorneys' fees and expenses, provided that Lead Counsel may request the Court to permit immediate payment of all or part of the award. Lead Counsel shall thereafter allocate the attorneys' fees amongst Plaintiffs' Counsel in a manner in which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Litigation.

6.3    In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Stipulation is terminated, and in the event that any Fee and Expense Award has been paid to any extent, then each Plaintiffs' Counsel, including Lead Counsel, shall within ten (10) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund, any fees, expenses, and costs previously paid or otherwise transferred to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund: (a) in the full

- 23 -

amount if the Effective Date does not occur or the Stipulation is terminated, or (b) in such other amount corresponding to that portion of any Fee and Expense Award that is reversed or modified. Each such Plaintiffs' Counsel's law firm, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

6.4    The procedure for and the allowance or disallowance by the Court of any applications by Lead Plaintiffs or Lead Counsel for attorneys' fees, costs, and expenses to be paid out of the Settlement Fund, are not part of the settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement set forth in the Stipulation, and any order or proceeding relating solely to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation or the effectiveness of the release and discharge of all Released Claims in favor of the Defendants, or affect or delay the finality of the Judgment approving the Stipulation and the settlement of the Litigation.

6.5     Defendants and the Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Plaintiffs' Counsel from the Settlement Fund.

6.6     Defendants and the Released Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Counsel, and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

7.     **Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

7.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     Defendants have timely made, or caused to be made, their payment to the Settlement Fund as required by ¶¶2.1 and 2.2 hereof;

(b)     Immucor has not exercised its option to terminate the Stipulation pursuant to ¶7.5 hereof;

(c)     the Court has entered the Judgment, or a judgment substantially in the form and content as the parties propose in Exhibit B attached hereto, or a judgment in a form other than that provided above ("Alternate Judgment") acceptable to all of the Settling Parties;

(d)    the Judgment or Alternative Judgment has become Final, as defined in ¶1.10; and

(e)    the derivative action styled *Anthony Nardiello v. Edward L. Gallup, et al.*, Superior Court of Fulton County, Georgia, Civil Action No. 2006CV110734 stands terminated by a voluntary dismissal with prejudice that is both final and nonappealable.

7.2    Upon the occurrence of all of the events referenced in ¶7.1 hereof, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, as well as all Released Claims, shall be absolutely and forever extinguished.

7.3    Defendants' counsel or Lead Counsel shall each have the right to terminate the settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) days of: (a) the Court's declining to enter the Notice Order in any material respect; (b) the Court's refusal to approve this Stipulation or any material part of it; (c) the Court's declining to enter the Judgment in any material respect; (d) the date upon which the Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (e) the date upon which an Alternate Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

7.4    If all of the conditions specified in ¶7.1 are not met, then the Stipulation shall be canceled and terminated subject to ¶7.7 unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Stipulation.

7.5    In addition to the grounds for termination of the settlement in ¶7.3, Immucor shall have the option to terminate the settlement in the event that Persons who would otherwise be Class Members who purchased more than a certain number of Immucor common stock shares during the Class Period choose to exclude themselves from the Class, as set forth in a separate agreement (the "Supplemental Agreement") executed among the Lead Plaintiffs and Defendants.

7.6    Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within ten (10) business days after written notification of such event is sent by counsel for Defendants or Lead Counsel, the Settlement Fund (including accrued interest), less any notice and administration expenses incurred from the Settlement Fund, approved or to be approved by the Court not to exceed $100,000, shall be refunded by the Escrow Agent pursuant to written instructions from counsel for Defendants. At the request of counsel for Defendants, the Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to Immucor.

7.7    In the event that the Stipulation is not approved by the Court or the settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation as of March 1, 2007. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.26, 2.3-2.8, 7.3-7.7, and 8.3-8.5, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses and interest awarded by the Court to the Lead Plaintiffs or any of their counsel shall constitute grounds for cancellation or termination of the Stipulation. If the Stipulation is terminated pursuant to its terms, neither the Lead Plaintiffs, nor any of their counsel shall have any obligation to repay any amounts paid or payable from the Settlement Fund.

## 8.    Miscellaneous Provisions

8.1    The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to

effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

8.2    Each Defendant warrants as to himself or itself that, at the time any of the payments provided for herein are made on behalf of himself or itself, he or it is not insolvent and the payment will not render him or it insolvent. This representation is made by each Defendant as to himself or itself only, and is not made by counsel for the Defendants.

8.3    If a case is commenced in respect to any Defendant (or any insurer contributing funds to the Settlement Fund on behalf of any Defendant) under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver, or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of any Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by other Defendants, then, at the election of Lead Counsel, the parties shall jointly move the Court to vacate and set aside the releases given and Judgment entered in favor of the Defendants, which releases and Judgment shall be null and void, and the parties shall be restored to their respective positions in the Litigation on March 1,

2007, and any cash amounts in the Settlement Fund shall be returned as provided in ¶7.6 above.

8.4    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. In particular, the agreement of the Settling Parties to resolve consensually the Released Claims on a class-wide basis is entered into without prejudice to Defendants' right, in the event that the Stipulation is terminated or the Court declines to approve settlement, to contest class certification. The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the settlement were negotiated in good faith by the Settling Parties, and reflect a compromise that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

8.5    Neither the Stipulation nor the settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the settlement: (a) is or may be deemed to be or may be used in any proceeding as an admission of, or

evidence of, the validity of any Released Claim, any defenses to such claims, or of the presence, absence, or extent of any wrongdoing or liability of the Defendants and the Released Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants and the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Defendants and the Released Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.6    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.7    This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.8    This Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement between Lead Plaintiffs and Defendants and no representations, warranties, or inducements have been made to any party concerning the Stipulation or its Exhibits or the Supplemental Agreement other than

- 31 -

the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs.

8.9    Lead Counsel, on behalf of the Class, are expressly authorized by the Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which they deem appropriate.

8.10    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

8.11    This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

8.12    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

8.13    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Stipulation.

- 32 -

8.14   This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Georgia, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Georgia without giving effect to that State's choice-of-law principles.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated as of May 14, 2007.

CHITWOOD HARLEY HARNES LLP


MARTIN D. CHITWOOD
Georgia State Bar No. 124950
GREGORY E. KELLER
Admitted pro hac vice
MERYL W. EDELSTEIN
Georgia State Bar No. 238919
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: 404/873-3900
404/876-4476 (fax)

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
PAUL J. GELLER
JACK REISE
DOUGLAS WILENS
120 East Palmetto Park Road, Suite 500

- 33 -

Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
JEFFREY D. LIGHT


JEFFREY D. LIGHT

655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

Co-Lead Counsel for Plaintiffs

BONDURANT MIXSON &
ELMORE, LLP
JEFFREY O. BRAMLETT


JEFFREY O. BRAMLETT

3900 One Atlantic Center
1201 W. Peachtree Street, N.W.
Atlanta, GA 30309
Telephone: 404/881-4100
404/881-4111 (fax)

Counsel for Defendants

- 34 -

Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
JEFFREY D. LIGHT

_____
JEFFREY D. LIGHT

655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

Co-Lead Counsel for Plaintiffs

BONDURANT MIXSON &
ELMORE, LLP
JEFFREY O. BRAMLETT

_____
JEFFREY O. BRAMLETT

3900 One Atlantic Center
1201 W. Peachtree Street, N.W.
Atlanta, GA 30309
Telephone: 404/881-4100
404/881-4111 (fax)

Counsel for Defendants

- 34 -